8656

HUGGINS v. ATLANTIC COAST LINE R. R. CO.

1. MASTER AND SERVANT—ISSUES.—Where there is evidence tending to show that an engineer had reported his fireman as disobedient and reckless, and that the foreman promised him another on his next run, the issue of recklessness in providing an incompetent fireman was properly sent to the jury, although the evidence of the defendant strongly contradicted that of plaintiff.

2. IBID.—NEW TRIAL.—Where the evidence is conflicting as to whether an engineer was injured because of an application of the emergency brakes by the fireman while moving the engine, at the signal of the engineer or of a brakeman, it is not error to refuse new trial on the ground that the injury was caused by the signal given by the brakeman.

3. PLEADINGS—EVIDENCE.—Under a general allegation that a fireman had a habit of tampering with the engine, evidence of his doing so in particular instances is admissible.

4. IBID.—IBID.—Under a general allegation that the master knew of a fireman's unfitness, and that same had been frequently reported to him, evidence that other employees than plaintiff had complained of his unfitness to the master, is competent.

5. CHARGE—BURDEN OF PROOF.—The charge complained of, is not amenable to the objection that the jury was instructed that the burden was on defendant to prove every allegation of contributory negligence in order to relieve itself of liability.

6. PUNITIVE DAMAGES.—Where there is some evidence to sustain the allegations of wilfulness, defendant has no ground for complaint, that at close of the argument, plaintiff was permitted to withdraw his claim for punitive damages, after insisting on it in evidence and argument.

7. JURORS—SERVICE OF AFFIDAVITS.—There is no statute or rule of Court requiring affidavits as to misconduct of jurors to be served on opposing counsel four days before hearing in motion for new trial.

8. IBID.—WbAIVER.—Where counsel who are aware that the sheriff who has been ordered to keep the jury together during the trial of a cause, permitted one to speak to one of the parties during recess in the courtroom and give him a cigar and permitted another to go into the courthouse yard in company with one not of the panel and not an officer, during the progress of the case, do not then call the attention of the Court to the irregularities, but do so on motion for new trial after verdict, they thereby waive the right to have the Court consider the point.

9. VERDICT—JURISDICTION.—This Court has no power to set aside a verdict because excessive, unless it be so excessive as to warrant the conclusion that it was not founded in the evidence, but was prompted by caprice, passion, prejudice or other consideration. Here a verdict for $40,000 for permanent injury to a young man of family earning a good salary held to be within the evidence.

10. A PETITION FOR A REHEARING is *ex parte* and is designed to bring to the attention of the Court matters of law or fact which counsel think the Court has overlooked or disregarded in the consideration of the case.

11. IBID.—ARGUMENT.—Counsel may submit argument on petition for a rehearing, but the grounds and argument should be kept as distinct and separate as the exceptions and argument.

12. "CASE."—The Court is bound by the "case" as printed, and it will not consider affidavits of counsel or of the trial Judge as to matters connected with the trial of the case not incorporated in the "case" or fairly inferable from facts incorporated.

13. IBID.—If by accident, mistake, inadvertence, surprise or excusable neglect anything should be omitted from the "case" or *vice versa,* the Court, on motion duly noticed supported by affidavits, has the discretion to relieve against it.

14. COURT—TRIAL—NOTICE.—While it is not always expedient to bring to the attention of the Judge in open Court matters transpiring during the trial, nothing pertaining to the trial should ever be brought to his attention in any way without notice to opposing counsel.

Before COPES, J., Barnwell, March, 1912.    Affirmed.

Action by H. C. Huggins against Atlantic Coast Line R. R. Co. and Peter Wilson. Defendant railroad company appeals.

*Messrs. P. A. Wilcox, Harley & Best* and *Lucian W. McLemore,* for appellant, cite: *Duty of master to employ competent servants:* Elliott on R. R., sec. 1284; 77 S. C. 550. *Evidence as to specific incidents of incompetency not alleged, incompetent:* Jones on Ev. sec. 165; Elliott, sec. 1796. *Keeping jury together is discretionary with judge:* 9 Rich. 133.

*Messrs. R. C. Holman, L. K. Sturkie, W. A. Holman, Best & Cunningham* and *Bates & Simms,* contra. *Messrs. W. A.* and *R. C. Holman,* cite: *Master must furnish safe employees:* 61 S. C. 468; 92 S. C. 528. *Under general allegations, specific acts are competent:* 47 S. C. 28. *Whether injury was caused by act of master or fellow servant is for jury:* 92 S. C. 528; 79 S. C. 512. *Appellant was not prejudiced by withdrawal of claim for punitive damages:* 92 S. C. 572; 76 S. C. 278; 72 S. C. 442; 73 S. C. 211, 467; 87 S. C. 166; 84 S. C. 202. *No improper influences were shown to have been used on the jury:* 68 S. C. 494; 60 S. C. 67; 75 S. C. 409, 177.

*Mr. E. J. Best* cites: *When an allegation is material:* 5 Words and Phrases 4404-5; 40 Pac. 527; 5 Wy. 335; 18 Nev. 109; 48 Ark., 247; 7 Col. 62; 75 Ken. 592; 7 Kan. 343; 72 U. S. 689. *Negligence of master combining with that of fellow servant:* 79 S. C. 502. *Contributory negligence is no defense to wilfulness:* 61 S. C. 187; 23 S. C. 521; 82 S. C. 321; 85 S. C. 25. *Servant may assume manifest risks:* 81 S. C. 338.

The opinion in this case was filed June 10th, but remittitur held up on petition for rehearing until

September 29, 1913. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. This is an action for damages for personal injuries sustained by plaintiff, on October 21, 1909, while in the service of the defendant company as a locomotive engineer. He alleges that his injuries were caused by the negligent, wilful and wanton conduct of defendant in furnishing him an incompetent fireman, Peter Wilson, by name, to assist him in the discharge of his duties as engineer, that said Wilson had the habit of tampering with the engine and moving the train without his authority and against his objection and protest, a fact which he had reported to the company several times, but, notwithstanding said reports, and the company's knowledge that Wilson constantly and persistently interfered with the engine, contrary to his orders and the rules of the company, he was compelled to accept the assistance of said Wilson; that on the day he was injured, while he was in the caboose attached to his train, where he had the right to be, Wilson took charge of the engine and began to move the train, that for the purpose of stopping him as was his duty, he left the caboose while the train was moving slowly, and got upon a flat car loaded with clinkers to signal him to stop, there being a number of cars between him and the engine; that when he gave him the signal to stop, instead of applying the service brakes, as he should have done, he applied the emergency brakes, and stopped the train so suddenly and violently that he was thrown to the ground under the car and injured.

The answer was a general denial and the plea of contributory negligence on the part of plaintiff in allowing Wilson to operate the engine, instead of doing so himself, and in unnecessarily exposing himself to danger by going upon the flat car to give the signal, when he could have done so with safety from the ground. There were nine specifications of contributory negligence, but the foregoing general statement substantially covers them all, in so far as they were sustained by evidence and relied upon in argument.

Plaintiff's testimony and that of his witness, Miller, tended to prove his allegations as to Wilson's persistence in disobeying the orders of the engineer and the rules of the company in moving the engine, and that it had been frequently reported to Charles Sykes, defendant's foreman, who had charge of that department of labor; they testified that before going out on his last trip, plaintiff objected to taking Wilson as his fireman, saying to the foreman, "If you don't remove this man, he is either going to cause me to hurt somebody, or he will tear me up;" that the foreman told him to take Wilson on, and that he would give him another fireman on the next trip.

Upon the issues as to Wilson's unfitness for the reason alleged, and as to the fact thereof having been reported to Sykes, the foreman, there was sharp conflict in the testimony. Only the plaintiff and his witness, Miller, testified to the affirmative of these issues, while some five or six engineers, the conductor of plaintiff's train, and others testified that Wilson was a good and obedient fireman; and the foreman denied that any report of the alleged objection to Wilson as a fireman had ever been made to him, saying that, if such report had been made, he would not have kept him in the service two minutes. He admitted, however, that plaintiff had complained of Wilson's inability to keep the engine hot.

Plaintiff testified that he got upon the flat car to signal Wilson to stop, and that he sat down on the corner of the car to make himself safe, and gave the signal; that his position was a safe one, if the train had not been stopped so suddenly and violently. On the other hand, defendant's testimony tended to show that Wilson was not running the train in disobedience of plaintiff's orders, but at his special request, and that the signal which caused him to put on the emergency brakes was given by Robert White, a brakeman.

Upon the close of all the testimony, the company moved for a directed verdict on the following grounds: "(First.) There is no proof of negligence upon which the plaintiff can recover. (Second.) There is no proof of wilfulness upon which the plaintiff can recover. (Third.) The entire testimony shows that the accident and resulting injury to plaintiff were caused or contributed to by plaintiff's own negligence. (Fourth.) The entire proof shows that the accident and resulting injury to plaintiff were due to acts of omission of a fellow servant or fellow servants." The motion was refused, and after hearing the arguments and the judge's charge, the jury rendered a verdict for plaintiff for forty thousand dollars; from judgment thereon, the company appealed.

The foregoing statement of the issues and evidence shows that there was no error in refusing the motion to direct the verdict. It would be a useless consumption of time to enter upon any lengthy consideration of the law and the evidence to show the correctness of our conclusion that, under the decisions of this Court, there was testimony which compelled the submission to the jury of all the issues raised by the pleadings. In deference, however, to the very earnest argument of the learned counsel for appellant, we notice the points which they have specially pressed upon the attention of the Court. The first of these is that, upon consideration of all the testimony in the case, the issue of punitive damages should not have been sent to the jury. The specific point urged in this connection is that, assuming the truth of plaintiff's testimony as to Wilson's unfitness and his report thereof to Sykes, the latter's conduct in retaining Wilson in the service must be judged in the light of the testimony of the five or six engineers and others who testified as to Wilson's fitness and efficiency. That argument would be of great force, if we had jurisdiction to decide questions of fact; but we are only permitted to say whether there was

*any* evidence from which a reasonable juror could have inferred a reckless or conscious disregard of plaintiff's right to a competent fireman to assist him and of defendant's duty to furnish him such an one. It must not be forgotten, however, that Sykes does not attempt to excuse his keeping Wilson in the service on the ground suggested, to wit, that he had investigated the charge, and found it untrue. On the contrary, he testified that no such report had been made to him; but that, if it had been, it would have been his duty to investigate it, and, if found to be true, to take Wilson out of the service. He also testified that, if such report had been made, Wilson would not have been left in the service two minutes. Assuming, then, as we must, that the report was made and that it was true, and that, against plaintiff's objection and protest, he was ordered to take Wilson out with him as fireman, and that he did so, under promise of being given another on his next trip, it certainly cannot be said that this testimony would not support a reasonable inference of a reckless or conscious neglect of the duty to furnish plaintiff with a reasonably safe, suitable and competent fireman.

The next contention which we notice is that the only rational conclusion which can be drawn from all the evidence is that the signal which caused the emergency brakes to be put on was given by Robert White, a brakeman, for whose negligence, being a fellow servant of plaintiff, defendant is not liable. Here, again, counsel have overlooked a conflict in the evidence. While defendant's testimony does tend strongly to support that conclusion, the plaintiff and his witness, Miller, both testified that the plaintiff himself gave the signal to stop, and, in response to that signal, the emergency brakes were applied. Therefore, it was a disputed question of fact whether the emergency brakes were applied on the signal from the plaintiff or on that given by the brakeman.

18—96

What has just been said disposes of the following assignment of error: That, having charged the jury that plaintiff could not recover, if his injury was caused by the negligence of any other member of the crew than the fireman, and plaintiff having testified and all the evidence having shown that the injury was caused by the application of the emergency brakes on a signal from the brakeman, the Court erred in refusing the motion for a new trial.

Appellant complained because the Court admitted testimony of specific instances, other than that alleged in the complaint, of Wilson's meddling with the engine. The ground of objection to this evidence was, "There is no allegation like that in the complaint." Turning to the complaint, we find the following general allegation: "Wilson had a habit of tampering with the engine * * * and of moving the train without authority * * * and had been doing such unauthorized acts long prior to the date above mentioned." The testimony was admissible under this general allegation. The ground now taken that evidence of specific instances of meddling with the engine was inadmissible, because notice thereof was not brought home to the company, cannot be considered, because that ground of objection was not made on circuit.

Upon the same principle, the exception which assigns error in allowing plaintiff to testify that other employees had complained to Foreman Sykes of Wilson's incompetency must be overruled. The ground of objection was that there was no allegation like that in the complaint. But the testimony was admissible under the general allegation, that defendant knew of Wilson's unfitness, and that the same had been repeatedly reported to its officers.

Appellant's next complaint is that the judge charged the jury that the burden was upon the defendants to establish every material allegation of the defense of contributory neg-

ligence, the contention being that, as there were nine specifications of contributory negligence, the charge required the proof of each and every one of them, whereas the proof of one was enough to defeat a recovery. Examination of the charge shows that the same burden was placed upon the plaintiff—that he must prove every material allegation of his complaint which, as a general statement of the law, is not incorrect. But it also appears from the charge that the jury were specially instructed, three or four times, that plaintiff could not recover, if he was guilty of negligence "in any one or more of the particulars specified in the answer." From this, we are satisfied that the jury were not misled by the general statement complained of.

At the conclusion of the arguments to the jury, plaintiff's attorneys announced that they would not ask a verdict for punitive damages. In response to this announcement, the judge charged that the jury must exclude punitive damages from their consideration. Appellant contends that it was error to allow plaintiff's attorneys to withdraw his claim for punitive damages after he had had the benefit of it throughout the trial and in the arguments to the jury. The record fails to show that appellant interposed any objection in the Court below, or that the Court made any ruling, upon which this exception can be based. So far as the record shows, it may be inferred that the course adopted by plaintiff's attorneys was acquiesced in by defendant's attorneys. But passing by this defect in the record, we fail to see wherein appellant was prejudiced. If there had been no testimony upon which punitive damages could have been recovered, appellant's contention would be sound, because the jury were instructed that contributory negligence is no defense to a reckless or wilful tort. Therefore, in the absence of any such testimony, respondent could not have sustained the verdict on the ground that, under the instructions of the Court, no punitive damages had been awarded, because, although the Court might assume that the

jury had obeyed the instruction, and had not awarded any punitive damages, still the question would be left open, with no way of finding out, whether the jury had denied to the defendant the benefit of the plea of contributory negligence on the ground that the injury was inflicted recklessly, wilfully, or wantonly. But as there was testimony to support such a finding, the withdrawal of the claim was favorable rather than prejudicial to defendant. We see no reason why a plaintiff should not be allowed to prove that a tort was recklessly, wilfully, wantonly or maliciously inflicted merely for the purpose of defeating the defense of contributory negligence.

When the jury were impaneled, the Court ordered the sheriff to take charge of them and keep them together. On . the first day of the trial, when the Court had adjourned for dinner, and after the judge and most of those in attendance had retired from the courtroom, and while the plaintiff, his wife and a few others remained, the sheriff also being present, several of the jurors went to where the plaintiff was sitting and shook hands with him and talked with him. One of them either picked up a cigar from the floor and handed it to him, or gave him a cigar and struck a match and assisted him to light it. This was observed by two of defendant's attorneys from the opposite side of the room. They called the sheriff's attention to what was going on and admonished him that it was in violation of the Court's order. Whereupon, the sheriff sent the jury to their room, until plaintiff was removed from the courtroom. During the dinner hour of the next day, being the day on which the verdict was rendered and prior to the rendition thereof, one of the jurors was seen by one of defendant's attorneys on the public square, near the courthouse, talking to another person, who was not a member of the panel. He had been allowed to separate from the panel and speak to this person without being accompanied by a bailiff. Neither incident was brought to the attention of the

Court, until after the verdict was rendered, when defendant's attorneys presented affidavits, setting forth the facts above stated, as the basis of one of their grounds for a new trial.   Plaintiff's attorneys objected to the consideration of the affidavits, because they had not been served upon them four days before the hearing of the motions.   They have given the proper notice that they would ask the Court to sustain the judgment, if necessary, upon the ground that the Circuit Court should not have heard the affidavits for the reason stated.   There is no statute or rule of Court which requires the service upon opposing counsel of the affidavits touching such matters four days before the hearing.   The circumstances might require a much shorter time.   Suppose, for instance, that such an irregularity should occur in the trial of a case only a few hours before the Court has to adjourn for the term by operation of law; in that event, it must be brought to the attention of the Court on short notice or not at all.   There was no error in hearing the affidavits.

Nor was there error in overruling the motion. While the conduct of the jurors was in violation of the Court's order, and they and the sheriff, or his bailiffs, who had charge of them, were reprehensible for doing and permitting it, and while they should have been reprimanded, or dealt with more severely, if their conduct was wilful, still the appellant waived its right to take advantage of it, by failing to bring it to the attention of the Court more promptly after it was observed.   Parties will not be allowed to speculate on chances by withholding information of such irregularities, until after verdict found, and then bring them forward or not as they may make for or against them.   If either incident had been brought to the attention of the Court at the first opportunity, to wit, upon the reassembling of the Court in the afternoon, it might have been investigated, and, according to the result of the investigation, in the exercise of its discretion, the Court might have ordered the trial to proceed, after proper caution and instruc-

tion to the jury; or it might have withdrawn the case from that jury and impaneled another; or it might have withdrawn it, and continued it to the next term, as the circumstances might have permitted or required. The disposition of complaints of such irregularities must necessarily be left to the judgment and discretion of the presiding judge, who, being in the atmosphere of the trial, is in much better position than this Court to determine whether all things considered they have resulted in injury or prejudice to the party complaining. Therefore, this Court will not interfere with the decision in such matters, unless it is made to appear clearly that it was erroneous and prejudicial.

Much has been said by counsel for appellant about the size of the verdict in this case. Unquestionably, it is a very large verdict. But if a verdict which is only moderately excessive, is allowed to stand, the trial judge is alone responsible; for he alone is vested with power and discretion to set it aside, absolutely or conditionally. This Court has no power to do so, unless, as was said in *Bing* v. *R. Co.,* 86 S. C. 530, 68 S. C. 645, it is so excessive as to warrant the conclusion that the circuit judge abused his discretion in refusing to grant relief against it. In that event, this Court would have the power to set it aside, because a verdict which is so excessive as to warrant the inference that it is the result of caprice, passion, prejudice, or other considerations not founded in the evidence, is without authority of law, and it would be manifest error of law to refuse to vacate it. To allow such a verdict to stand would be a just reproach upon the administration of justice. But in considering the size of the verdict, we must not overlook the fact that plaintiff's injury was severe and his consequent damages were great. At the date of his injury, he was a young man in good health, thirty-five years old, with a wife and children dependent upon him for their support, and he was earning from $150 to $200 a month. Now he is totally and permanently disabled, not even able to turn

himself in bed without assistance and, according to the evidence, he is doomed for the balance of his life to suffer pain of body and necessarily, also, that anguish of mind which is consequent upon his physical suffering and the contemplation of his helpless and hopeless condition.

Affirmed.

MR. JUSTICE HYDRICK. Upon the filing of the petition for rehearing, in deference to the earnest request of counsel for appellant, we carefully re-examined the record and the arguments of counsel in the light of the allegations of the petition, and the argument in support thereof, but we have not discovered that any material fact or principle of law was overlooked or disregarded in the original consideration of the case.

The third paragraph of the petition is as follows: "With reference to exceptions 13 and 14, petitioner desires to present to the attention of the Court one fact which the decision in the case has brought forward, and which possibly has not heretofore been noticed in the important bearing which it now occupies. In passing upon the question of the improper conduct of the jurors the Court says: 'Neither incident was brought to the attention of the Court until after the verdict was rendered, when defendant's attorneys presented affidavits setting forth the facts above stated, as the basis of one of their grounds for a new trial.' The fact is that immediately following the incident observed in the courtroom, as soon as counsel for your petitioner could gain access to his Honor, the Circuit Judge, the facts were laid before him; no time was lost, but he was fully apprised of the situation before the reassembling of the Court in the afternoon, and we wish to impress upon this Court the fact that there was no attempt on the part of counsel for your petitioner to speculate by withholding information which it was believed the Circuit Judge should be supplied with. It seems now unfortunate that the record does not show this

fact; so far as counsel for your petitioner can recall no contention has been made in the case by opposing counsel that this was not done, and certainly could not have been made before the Circuit Judge, or, if made, have affected his mind, because he was well aware of the fact that the matter had been brought to his attention. This case is not of ordinary concern; it is of the most vital moment, and in the judgment of petitioner's counsel one in which the verdict was clearly the result of undue sympathy on the part of the jury. The verdict does not represent a dispassionate assessment of damages. Therefore, in considering the present question it is vital for this Court to take into consideration every incident that might have bearing on the verdict. As we have already stressed in the argument before this Court and in our printed brief, it was obviously impossible for your petitioner's counsel to produce evidence of the nature of the communication with the jurors. And more important still, notice should be taken of the fact that plaintiff could have explained the transaction, or the Court could have inquired into it. Nothing was done, and the fact stands of improper conduct and the violation of an order of the Court. We therefore earnestly beg that the Court will, if necessary, give to your petitioner the benefit of a further report from his Honor, the Circuit Judge, so that the record in the cause may show the fact which this Court now regards as vital—that the improper conduct on the part of the jury complained of was brought to the attention of the Court. Under the circumstances appearing in this case, we feel impelled to urge upon the Court petitioner's principal contention, which embodies every specific contention relied upon in the argument of the appeal, that is, that upon the whole case, where it appears that viewed in the light most favorable to plaintiff upon the issues involved there is barely a *scintilla* of evidence, this Court should apply the most rigid test in measuring plaintiff's right to recover such a verdict as that rendered here,

and should not hesitate to afford some relief from what must be apparent as a recovery palpably against the law applicable and the evidence adduced on the trial."

A short time after the filing of the petition, Mr. E. J. Best, one of plaintiff's attorneys, wrote each member of the Court as follows:

"Sirs: I am at a loss to know how to proceed in the case of *H. C. Huggins, plaintiff-respondent,* v. *Atlantic Coast Line Railroad Company, defendant-appellant,* now pending before your honorable Court on a petition for a rehearing. The affidavit of Hon. R. E. Copes, presiding Judge, shows the facts stated in paragraph 3 of the petition, to the effect that counsel for the defendant railroad company called to the attention of the trial Judge the so-called or alleged misconduct of jurors, are absolutely false and untrue. Judge Copes states, in the form of affidavit, herewith enclosed, that he had no knowledge whatever, of any kind, that any alleged misconduct on the part of jurors had taken place, until his attention was called to the fact about a week after the trial had ended. If this be true then it is a matter, which I respectfully submit, this honorable Court should investigate upon its own motion and responsibility; such statements by practitioners of this honorable Court should not go unnoticed. A palpable wrong and injustice can be done a successful litigant by petition for rehearing if all kinds of *ex parte* statements are permitted to be made, which are calculated to influence the Court. I am writing, as I stated, asking for a suggestion as to the mode of procedure to be adopted under these extraordinary circumstances and I will thank the Court to confer in regard to what is the proper course for me to pursue under the circumstances. I am desirous of protecting the rights of my client to the fullest, but do not desire to violate any rules of procedure or the practice which does and ought to obtain before your honorable Court. Paragraph 3 of the petition

for a rehearing is equivalent to presenting absolutely new
evidence on the part of the railroad company by *ex parte*
affidavits without the right of plaintiff-respondent or his
attorneys to refute the same absolutely which can be done
in the case under consideration."

In his affidavit, which accompanied Mr. Best's letter,
Judge Copes said that the alleged misconduct of the jurors
was not brought to his attention, privately or officially, until
the hearing of the motion for a new trial, which was about
a week after the rendition of the verdict.

In reply to Mr. Best's letter, the Court, through a letter
of the Chief Justice, advised him that he should send a copy
of the letter which he had addressed to the members of the
Court and a copy of the affidavit of Judge Copes to the
attorneys for the appellant.

Upon receipt of copies of this letter and affidavit, the attor-
neys for the appellant submitted affidavits of Mr. C. A. Best
and Mr. Lucian W. McLemore to the effect that, as soon as
they could get the opportunity to do so, after they had
observed the conduct of the jurors in question, and before
any other step was taken in the trial, at the suggestion of Mr.
P. A. Wilcox, their senior associate, to whom they had
repeated the incident, they went to Judge Copes, in his pri-
vate office, and told him what they had seen, as afterwards
set out in their affidavits on the motion for a new trial; that
the Judge stated that he was glad that they had done so, and
that he would bear it in mind; that he did not suggest or
require that it should be brought to his attention in open
Court. Mr. Wilcox, in his affidavit, affirms that they men-
tioned the incident to him, and that he advised them to
inform the presiding Judge of it privately, and suggest to
him that, if he thought best, it would be brought to his atten-
tion in open Court; that they went to the Judge's private
office, and, on returning, reported to him that they had
carried out his instructions.

Thereafter, in consequence of the letter of Mr. E. J. Best, Mr. Wilcox and his associates demanded an investigation of their conduct by this Court.

These incidents have suggested the advisability of our calling attention to the practice and procedure in such matters, which has long prevailed and received the sanction of the bench and bar, and the importance of adhering to it, in order that ill advised action on the part of members of the bar may be avoided in future.

A petition for rehearing is *ex parte*. It has never been the practice to serve notice or the grounds thereof on opposing counsel. It is designed to give counsel the opportunity to bring to the attention of the Court matters of law or of fact which counsel who file it think that the Court has overlooked or disregarded in its consideration of the case. It is not intended that it shall be taken advantage of to reargue questions which were fully argued at the hearing, and were considered and decided by the Court.

The grounds of the petition should, therefore, state, as concisely as possible, the matter of fact or principle of law which the Court is supposed to have overlooked or disregarded. If counsel desire, they may submit argument in support of the grounds, but it should be separate and apart from the grounds themselves, and not incorporated in or commingled with them. The two should be kept as separate and distinct as the exceptions, or grounds of appeal, and the argument on appeal.

We have declared in numerous cases that we are bound by the "case," as prepared for the hearing of the appeal in this Court, and that we will not consider, or allow to influence our decisions anything that counsel may say in argument, or otherwise, which is not based upon the "case." We do not consider statements found in the exceptions, unless they are supported by the facts stated in the "case." Of course, either side may rely upon

anything which is fairly inferable from what is in the "case." In view of this frequently repeated declaration of the Court, it was entirely useless, and not in accord with the proper practice, for counsel for appellant to assert in their petition that the alleged misconduct of the jurors had been brought to the attention of the Circuit Court, and the statement should not have been made, because it was admittedly not so stated in the "case," nor reasonably inferable from what was there stated.

The statutes and rules of Court provide the manner in which the "case" shall be agreed upon or settled by the trial Judge and prepared for the hearing of appeals in this Court, and when it has been so agreed upon or settled, all parties, including this Court, are bound by it. Therefore, it behooves counsel to exercise due care to see that it contains all that it should and nothing that it should not to sustain their various contentions. If, however, by accident, mistake, inadvertence, surprise, or excusable neglect, anything should be omitted which should have been inserted, or *vice versa,* the proper course is to move this Court, upon due notice and affidavits served upon opposing counsel, to recommit the "case" to the Circuit Court, for the purpose of having it corrected—a motion which this Court has the discretion, in furtherance of justice, to grant, upon such terms as may seem just and proper. It follows that the affidavit of Judge Copes should not have been asked for or given, because it foreclosed his judicial attitude in relation to the matter, when circumstances might have required that the "case" be recommitted to him to settle the dispute between the parties upon the very point upon which he had given one of them an affidavit, without the attorneys on the other side having had an opportunity to refresh his recollection about the matter in dispute.

On the other hand, counsel for respondent should have known that, under the rule above stated, this Court would pay no attention to the statement referred to, and, there-

fore, he violated correct practice in two respects: First, in addressing any communication to the members of the Court upon the subject at all. Second, having done so, in not sending a copy thereof to opposing counsel. As a rule, subject to but few exceptions, no communication should be had by counsel engaged in causes with Judges touching matters pending before them, unless it be an *ex parte* proceeding, without the knowledge of opposing counsel. The incidents above narrated emphasize the importance of a strict adherence to this rule. If it had been observed, and counsel for the respondent had been invited to be present, when the alleged misconduct of the jurors was reported to the presiding Judge, there would probably have been no dispute about it. We are not to be understood as holding that everything should be brought to the attention of the presiding Judge in open Court, because that course might result in prejudice to one side or the other. There was, therefore, no impropriety in reporting the incident in question to the Judge in private, but opposing counsel should have been notified, and asked to be present, when it was done. But as respondent's counsel was not advised of what was done, and as it is not alleged in the petition that it was done in private and without his knowledge, he probably and naturally interpreted the allegation to mean that it was done in open Court. This may explain, even if it does not fully excuse his characterization of the allegation as "absolutely false and untrue." Possibly, if he had communicated with appellant's counsel and sought an explanation of the allegation, that which has been given would have appeared to be satisfactory. This leads us to remark that counsel should not be too quick to impugn the motives or the conduct of each other. Things are not always what they seem—especially when viewed in the fierce light of conflict and through glasses colored, perhaps, by personal and professional zeal and interest.

Being fully satisfied of the integrity of character of the counsel who have demanded an investigation of their conduct at the hands of this Court, and being satisfied, also, that the unfortunate circumstance which gave rise to the demand grew out of a misunderstanding between counsel for appellant and respondent, no investigation is deemed necessary. We take pleasure in saying that we are quite sure that the departures from the strictly correct practice which we have pointed out on the part of counsel for both parties were due entirely to inadvertence, without any thought of impropriety, or intention to gain any unfair advantage.

The petition is dismissed and the stay of remittitur heretofore granted, revoked.