YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* J. W. WALLACE.

[45 South., 857.]

DAMAGES. *Excessive. Personal injury. Fireman.*

A $50,000 verdict awarded a railroad brakeman for the loss of both legs is excessive, where his earning capacity did not exceed $90 per month, although he was only twenty-six years of age at the time of the injury, was unusually strong, healthy, sober and of correct habits.

FROM the circuit court of Yazoo county.

HON. DAVID M. MILLER, Judge.

Wallace, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there.   From a judgment in plaintiff's favor, the defendant appealed to the supreme court.

On a former appeal a judgment in favor of plaintiff was reversed and the cause remanded for new trial.   The case is reported, *Yazoo, etc., R. R. Co. v. Wallace,* 90 Miss., 609. On the second trial in the court below plaintiff amended his declaration changing his demand from $50,000 to $100,000.

The plaintiff, while in the discharge of his duties as a brakeman of the defendant railroad company, was riding upon the

pilot of a work train of the defendant, the engine in the temporary absence of the engineer being operated by the fireman. The engine and train approached a recently repaired railroad crossing when plaintiff, in order to give a signal to the fireman in charge of the train, undertook to cross from one side of the pilot to the other, by stepping upon a small and narrow stepping board on its side. While standing on this stepping board, the engine reached the crossing, and, as plaintiff claimed, because the crossing had been improperly repaired, his foot was caught between the pilot and the road bed, he was thrown under the engine and lost both legs. There was no evidence of wilful wrong on the part of any of defendant's agents or employes, nor did the declaration claim punitive damages.

The jury found for the plaintiff, awarding damages in the sum of $50,000, the same sum awarded on the first trial of the cause.

The defendant moved for a new trial on the ground, among others, that the verdict was excessive, but the circuit court overruled the motion.

*Mayes & Longstreet, Charles N. Burch,* and *Clarence L. Sivley,* for appellant.

From the whole record it is manifest that the verdict of the jury was clearly wrong, for there was a palpable failure of proof to warrant it, notwithstanding the evidence adduced. *Railway Co.* v. *Contrell,* 70 Miss., 321; *McAlexander* v. *Puryear,* 48 Miss., 420; *Pfeifer* v. *Chamberlain,* 52 Miss., 89; *Harris* v. *State,* 71 Miss., 416.

Accepting Wallace's statement in respect to the manner in which his injury was inflicted as true, so far as he has given any evidence on that point, it does not make out a case, and a peremptory instruction, as asked, should have been given for the defense. His testimony shows that he was guilty of such contributory negligence as should preclude recovery.

A careful reading of the whole record will show two impor-

tant facts: 1. No one undertakes to tell how the plaintiff was injured except himself. 2. He, himself, virtually admits that he does not know what the effective cause was; he only conjectures, and his conjecture is that it was " something " on the crossing. Not only is the presumption of negligence raised by Code 1892, § 1808, inapplicable to the case of an employe, but it is also the law that " mere conjecture will not support a judgment in any case, but the *causa causans* must be proved." *Owens* v. *Railroad Co.,* 77 Miss., 142.

Independent of any statutory presumptions (which, we submit, do not exist in this case) two elements are essential to a recovery by plaintiff: First, there must be shown negligence on the part of the defendant, which negligence was the proximate cause of the injury; secondly, the evidence must not disclose any contributory negilgence on the part of the plaintiff.

It is true, that there is a good deal of testimony about a low joint, and that the pilot sagged so that it was not elevated above the surface of the rails of the track quite as high as usual; and it is true, that there is a good deal of testimony about the surface of the crossing being so high that it was raised flush with the top of the rails. But even if the pilot sagged, and even if there were a low joint and a raised surface of track, it is impossible to see how the plaintiff's foot should have been caught under the standing board of the pilot. A peremptory instruction for the railroad company should have been given, because of the plaintiff's manifestly gross negligence.

The verdict was clearly excessive. The plaintiff was earning from $75 to $90 per month; that is, from $900 to $1080 per annum, assuming that he lost no time. The fair average between these two amounts is $990. Plaintiff's expectancy was shown to be thirty-eight years. The annuity tables, on the basis of six per cent, the legal rate in Mississippi, show that a payment of $14.84 would be the amount necessary to purchase an annuity of $1.00 per year for thirty-eight years. Hence to

purchase an annuity of $990, it is only necessary to multiply $990 by $14.84, which gives a product of approximately $14,695. Yet the jury gave a verdict of $50,000.

The jury probably assumed that the plaintiff would be helpless for the rest of his life, but such is evidently not a correct assumption; for the court will take judicial knowledge that many persons who are afflicted in like manner as plaintiff, are still able to earn a livelihood, not only for themselves, but for their families. The injury did not destroy plaintiff's earning capacity, but merely impaired it.

The assignment of the amount of damages if, of course, usually within the province of the jury, but, as our courts are aware, oftentimes juries give verdicts much in excess of reason, and as this verdict, so far as we are aware, is the largest award rendered by a Mississippi jury in any personal injury case similar to this, we insist that the judgment should be reversed and the cause remanded; or in case of affirmance, there should be a *remittitur* obligatory upon the plaintiff to reduce the amount to a proper limit.

*Cassedy & Cassedy,* for appellee.

Argued orally by *C. L. Sivley* and *Edward Mayes,* for appellant, and by *J. W. Cassedy,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

It would serve no useful purpose to attempt the setting forth in detail of the testimony in this case. It sufficiently appears, we think, after the most protracted and careful examination, that the pilot was at least two inches lower than the standard pilot is required to be; that the joint in the rail was a low joint, not fixed and steady, as it should have been; that the crossing was in bad condition; and that all these facts must have been known to the defendant company for at least thirty days prior to the injury. We are satisfied that the

company is liable, and that no reversible error is shown by the record. *Bell* v. *Southern R. R. Co.,* 87 Miss., 234; 30 South., 821.

We are not, however, satisfied with the amount allowed in this case. It seems to us unconscionably large, on the testimony in this record. It is true that two juries have awarded the same sum, $50,000; and it is also true that the injury here is of the gravest possible character, and that there has been great mental and physical suffering on the part of the appellee. All this we keep fully in view; but we cannot bring ourselves to affirm this excessive verdict, with all these things conceded. It appears that Wallace at the time of his injury had just about completed his twenty-sixth year; that he was an unusually strong and healthy young man, six feet two inches in height; that he was sober and correct in his habits and manner of living; and that, according to the American Table of Mortality, Wallace had a life expectancy of thirty-eight years. But it must be remembered that this expectancy, calculated by these tables, is the expectancy of a normal man, not one with both legs cut off. It is hardly reasonable to believe that Wallace will live as long in his present condition as he would have lived uninjured in this way. It is shown that his earning capacity as a railroad brakeman at the time of the injury was from $75 to $90 per month, and it is proven that he would be subjected to an additional necessary expense in living, by reason of having to have an attendant, etc., of between $300 and $500 per year. The learned counsel for appellee have pointed out three methods of ascertaining his damages; that is to say, the actual money loss to Wallace. In dealing with the third method stated by them, that of ascertaining the amount which would compensate Wallace for the actual money loss sustained, by providing him with an annuity of $1,350 annually, they work out this result, to-wit: that the present value of an annuity of $1,350 would be $28,400 and that, by adding to this $1,600 Wallace claims to have spent on account of his

injury, $30,000 would be obtained as the actual present value of the money damage done him; and this, they say, is on the basis of an expectancy of thirty-eight years furnished by the American Tables of Mortality. But, as we have shown, it is hardly fair to the defendant to fix the expectancy of Wallace, in his present crippled and ruined physical condition, at thirty-eight years.

Keeping in mind this fact, and keeping in mind that he is to be allowed for his physical and mental suffering as actual damages, and taking what would be a reasonable *mesne* sum from the testimony of his wage-earning capacity and of his increased necessary expenses of living, we are satisfied to let the verdict stand at the sum of $30,000; and we think this is all that the testimony in this case can be said to fairly warrant. It is an extremely difficult matter, at best, for a court to deal with the amount of damages. As we have said in the case of *Hardy* v. *M. C. R. R. Co.,* 88 Miss., 732; 41 South., 505: "It was the province of the jury, and the jury alone, to measure in dollars and cents the amount due for physical and mental anguish and suffering, and, unless in a case where the verdict plainly shows that the jury must have been influenced by passion, prejudice, or corruption, this court never interferes with their finding as to damages. This court has no scale delicate enough to weigh physical and mental anguish. At best it is an extremely difficult task. The law has committed this delicate task to the unbiased judgment of the twelve plain, practical, everyday men, who compose the jury, and it can nowhere be more safely rested than in the application of their good sense and honest judgment to the particular facts proven in each particular case." We cannot escape the conclusion that the amount of $50,000 is so utterly out of all proportion to the damage fairly proven that the verdict must be regarded as one influenced, as to amount, by passion and prejudice.

If the appellee will remit down to $30,000, the judgment will be affirmed; otherwise, it will be reversed, and the cause remanded.