(87 South. 866)

**ILLINOIS CENT. R. CO. v. JOHNSTON.\***
(6 Div. 775.)

(Supreme Court of Alabama. June 30, 1920.
Rehearing Denied Oct. 21, 1920.)

**1. Release ⊕⇒24(2) — Injured employee not required to restore money given him as condition to avoiding release.**

If the money received by injured employee at the time of the execution of a release was given to him as a gift, so that there was no consideration for the release, the employee was not required to restore the money, as a condition to his avoidance of release.

**2. Appeal and error ⊕⇒232(1½)—Objection to pleading not specified in demurrer not available on appeal.**

Under Code 1907, § 5340, requiring specification of objections to pleading, an objection to replication not specified as a ground of the demurrer is not available on appeal.

**3. Contracts ⊕⇒94(4) — Defrauded party may avoid instrument notwithstanding failure to read it.**

The fraudulent misrepresentation of the contents of an instrument by a party thereto or by his agent taking the instrument affords grounds to avoid the instrument's effect, notwithstanding failure to read the instrument.

**4. Release ⊕⇒17(2) — Procurement by fraud avoids notwithstanding failure to read it.**

Injured employee's failure to read release did not preclude him from avoiding it on the ground that his signature thereto was procured by fraudulent representation.

**5. Release ⊕⇒52—Authority of agent guilty of the fraud relied on to avoid release held sufficiently pleaded.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injuries to employee, replication in reply to answer pleading release and seeking to avoid such release on the ground of fraud *held* suffi-

\*Certiorari denied 254 U. S 654, 41 Sup. Ct. 218, 65 L. Ed. ——, and writ of error dismissed 255 U. S. ——, 41 Sup. Ct. 375, 65 L. Ed. ——.

cient to charge person who procured release as defendant's agent with the fraudulent conduct relied on, making it unnecessary to otherwise allege his authority.

**6. Courts ⊕⇒97(5) — Master and servant ⊕⇒ 250¼, New, vol. 15 Key-No. Series—Federal law governs substantive rights of railroad employee and state law procedure.**

In action for injuries to an employee under federal Employers' Liability Act as amended in 1910 (U. S. Comp. St. §§ 8657–8665), the federal law governs as to the substantive rights, while the state law governs as to matters relating to practice and procedure.

**7. Master and servant ⊕⇒265(1) — Burden of proving relationship on plaintiff.**

In an action against railroad under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), the plaintiff has the burden of proving the relationship of master and servant.

**8. Master and servant ⊕⇒88(1)—Test of relationship stated.**

The test as to whether the relationship of master and servant existed between the plaintiff and the defendant, in an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), is whether the defendant had the right to direct the manner in which the business should be done as well as the result to be accomplished.

### On Rehearing.

**9. New trial ⊕⇒102(1) — Failure to discover evidence must not be result of negligence.**

Refusal of new trial for newly discovered evidence was proper, where there was no showing that failure to discover or present such evidence on the trial was not negligence.

**10. Master and servant ⊕⇒284(2) — Employment by railroad or express company held question for jury.**

In an action against a railroad under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), whether the plaintiff was an employee of the railroad, or, as claimed by the railroad, an employee of an express company, *held* a question for the jury.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

205 ALA.—1

**11. Damages** ⊙━132(1)—**$30,000 for crippling injury to back and head not excessive.**

Verdict of $30,000 to 41 year old railroad employee earning $80 per month at time of injury, which salary at the time of trial had been increased to $110 per month, for injuries to back and head making him a helpless cripple for life and causing him constant pain at time of trial four years after accident, *held* not so excessive as to justify interference by Supreme Court.

Anderson, C. J., and McClellan, J., dissenting, and Sayre, J., dissenting in part.

Appeal from Circuit Court, Jefferson County; C. W. Ferguson, Judge.

Action by C. B. Johnston against the Illinois Central Railroad Company. There was judgment for plaintiff in the sum of $30,000, and the defendant appeals. Affirmed.

The amended complaint, consisting of a single count, is as follows:

"Plaintiff claims of the defendant, a body corporate, doing business in Jefferson county, state of Alabama, $50,000. damages, for that on, to wit, November 18, 1913, defendant was engaged in the carriage of freight and passengers for hire between the states of Tennessee and Alabama by means of a steam railroad, and plaintiff on said date, while employed by defendant in said commerce, was injured in Walker county, state of Alabama, as follows: The car in which plaintiff was employed to perform his duties was derailed breaking one of plaintiff's fingers, on his right hand, lacerating his scalp and severely and seriously injuring his back, spine, kidneys, brain and nervous system, thereby causing plaintiff to endure very great physical and mental pain and suffering, to lose a great deal of time from his employment, and to incur great expense in and about the treatment of said injuries, permanently injuring plaintiff and permanently rendering him less able to earn a livelihood. Plaintiff avers said injuries were proximately caused by reason of a defect in the track of said railroad at the place where said car was derailed.

"Amended Complaint.

"Plaintiff amends the complaint by leave of the court by adding at the end of first count of the complaint the following: 'Plaintiff avers said defect was due to the negligence of the defendant,' and by striking out the word 'Mississippi' wherever the same occurs in said complaint and inserting in lieu thereof the word 'Alabama.'"

In addition to a general traverse of the amended complaint and the statute of limitations of one year, the defendant filed the following pleas:

"(2) That prior to the commencement of this suit the American Express Company, for itself and the Illinois Central Railroad Company, this defendant, paid to the plaintiff the sum of $500 in compromise and settlement of the injury alleged in the complaint and in considera-tion of the execution by the plaintiff of the following receipt and release, namely:

"'Received of the American Express Company five hundred and no/100 ($500.00) dollars, and in consideration of said sum, I, Clarence B. Johnston of Birmingham in the county of Jefferson and state of Alabama, hereby remise, release and forever discharge the said American Express Company (and the Illinois Central Railroad Company) from any and all liability by reason of any matter, cause or thing whatever, whether the same arose upon contract or upon tort, and especially from all claim which I now have, or may hereafter have, arising in any manner whatever, either directly or indirectly, in whole or in part, from or on account of personal injuries sustained by me on or about November 18th, 1913, at or near Jasper, in county of Walker, state of Alabama.

"'In testimony whereof, I have hereunto set my hand and seal this twenty fifth day of June, A. D. 1914.

"'[Signed] Clarence B. Johnston. [Seal.]

"'J. G. Scott, Witness.

"'E. K. Stone, Jr., Witness.'

"Defendant avers that by the execution of said release and the payment of said sum of money the cause of action here sued on was settled."

"(5) That prior to. the commencement of this suit, plaintiff in consideration of the sum of, to wit, $68, paid him by the defendant, settled in full the cause of action now sued on."

"A. That after the occurrences complained of in the complaint plaintiff executed to the defendant jointly with the American Express Company, a release of the cause of action sued on, which was in words and figures as follows, to wit: (The release quoted in plea 2, above).

"Said release was executed in consideration of $500 then and theretofore paid plaintiff by the American Express Company under an agreement or understanding between the American Express Company and this defendant to the effect that this defendant would reimburse said American Express Company for part of the sum so paid plaintiff by it; and thereafter this defendant did pay to the American Express Company the sum of $219.66 to reimburse said American Express Company for this defendant's proportion of the sum paid for it by said American Express Company in accordance with said agreement and understanding, which agreement or understanding was, in substance, made known to plaintiff at the time of the execution of the release aforesaid.

"And this defendant further says that plaintiff has not tendered nor offered to repay either to the American Express Company or to this defendant any part of said sum of $500."

To pleas 2 and A, separately and severally, the plaintiff filed the following replication:

"Comes the plaintiff and for answer to defendant's plea 2 by way of general replication thereto denies each and every material allegation of said plea.

"For further answer to said plea by way of special replication thereto plaintiff says, at the time he signed said paper set forth in said plea he did not know the contents of said paper and

never knew it was a release of liability of the defendant or any one else for the injuries complained of in the complaint. Plaintiff avers he was deceived as to the contents of said paper and its contents were misrepresented to him by the defendant's agent E. K. Stone, Jr., and a fraud practiced upon him by said Stone. Said Stone, representing said paper to be merely a statement as to the moneys received by plaintiff from the American Express Company as a gift and expression of charity by it toward the plaintiff and in no sense a release from liability of said express company or any one else for damages caused by the injuries complained of in the complaint. Plaintiff avers he never received any consideration whatsoever for the signing of said paper, nor was he offered any consideration for the signing of the same. Plaintiff avers that whatever moneys he has received from the defendant, including the amount alleged in said plea, was represented unto him by said Stone as a gift from the American Express Company and as an expression of charity on its part toward him and not as a consideration for a release of the defendant or anyone else from liability to plaintiff for the injuries complained of in the complaint.

"C. B. Johnston.

"Sworn to and subscribed before me this December 13, 1917.     Wm. J. Waldrop, Clerk."

Plaintiff pleads to the defendant's plea A the same replications, separately and severally, which he has pleaded to defendant's plea 2. "Filed in office this 14 day of Dec. 1917."

To this replication to pleas 2 and A the defendant interposed the following demurrer:

"(1) It is not denied in said replications but that plaintiff knew some time after he signed said release what its provisions were, and there is no averment that he ever returned or offered to return the said sum alleged to have been paid him. (2) It is alleged in said plea and not denied in said replication that plaintiff was paid by defendant the said sum of $500, and it is not alleged in said replications that plaintiff has ever returned or offered to return said money, nor did he offer to rescind said contract though he knew what the provisions of the said release were. (3) Because the matters therein set forth were not sufficient to avoid the legal force of the facts set forth in said plea. (4) Because it attempts to vary by parol the terms and conditions of a written contract. (5) Because the facts therein set forth show that it was plaintiff's duty to have read said paper before signing the same, and that he is bound by the same whether he read it or not. (6) Because it does not show that plaintiff could not by reasonable and proper diligence on his part have known the contents of said paper. (7) Because the facts therein set forth show that plaintiff is bound by the contents of the paper that he did sign whether he knew the contents thereof or not. (8) Because said replication does not show that plaintiff has ever offered to return to the defendant the consideration set forth in the release set up in said pleas. (9) Because it does not show that plaintiff could not read or was otherwise prevented from ascertaining the contents of said paper. (10) Because said replication does not deny the execution of the release. (11) Because it does not appear that the plaintiff has ever tendered or offered to the defendant the sum alleged in said plea to have been paid plaintiff in settlement of the case. (12) Because it affirmatively appears from said replication that the plaintiff did not, and has not, offered to return to or tendered to the defendant within a reasonable time the sum alleged in said plea to have been paid to plaintiff. (13) Because it is not alleged that plaintiff was prevented from reading said release by any fraud of the defendant practiced upon him. (14) The alleged misrepresentations of the defendant are not sufficiently set forth or described. (15) It does not appear by whom said alleged misrepresentations were made. (16) It does not appear of what said misrepresentations consisted. (17) It does not appear by whom plaintiff was deceived. (18) It does not appear that plaintiff's alleged lack of knowledge was due or any fault on the part of defendant or of anyone for whose acts it was legally responsible. (19) It does not appear what fraud was practiced upon plaintiff. (20) Said denial of said release comes too late. (21) The alleged facts set out as constituting fraud do not as a matter of law constitute fraud. (21½) It does not appear that said Stone was acting within the line and scope of his authority. (22) It is not alleged that defendant intended said money as a gift."

Percy, Benners & Burr, of Birmingham, for appellant.

The court erred in reference to the pleaded written release and the replication thereto. 170 Ala. 530, 54 South. 280; 158 Ala. 470, 48 South. 546; 144 Ala. 246, 40 South. 394, 6 Ann. Cas. 804; 148 Ala. 143, 41 South. 870; 69 South. 607; 62 Fla. 208, 56 South. 684; 192 Ala. 396, 68 South. 298; 33 Ind. 125; (Tex. Civ. App.) 51 S. W. 290; 58 Neb. 44, 78 N. W. 482; 23 Fla. 143, 1 South. 618, 11 Am. St. Rep. 345. The decision of the national courts control in the construction of the federal Employers' Liability Act. 233 U. S. 501, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; 228 U. S. 702, 33 Sup. Ct. 703, 57 L. Ed. 1031; 153 Ky. 363, 155 S. W. 1119, 47 L. R. A. (N. S.) 31. The federal courts have never followed the scintilla doctrine. 22 Wall. 122, 22 L. Ed. 780; 94 U. S. 284, 24 L. Ed. 59. It was essential that plaintiff allege and prove that he was an employee of the defendant railroad company. Thornton's Fed. L. & S. Appliance Act, 50; Thornton's Fed. Emp. Liab. Act, 50; 237 U. S. 84, 35 Sup. Ct. 491, 59 L. Ed. 849. Under the facts in this case, the plaintiff was not an employee of the defendant. 237 U. S. 84, 35 Sup. Ct. 491, 59 L. Ed. 849; (C. C.) 122 Fed. 669; 38 Okl. 581, 134 Pac. 655; 232 U. S. 682, 34 Sup. Ct. 471, 58 L. Ed. 798; 120 Fed. 748, 57 C. C. A. 52; 166 Ala. 630, 52 South. 57, 139 Am. St. Rep. 59; 215 Ill. 525, 74 N. E. 705, 1 L. R. A. (N. S.) 674, 106 Am. St. Rep. 187, 3 Ann. Cas. 42; 239 U. S. 452, 36 Sup. Ct. 135, 60 L. Ed. 381; 240 U. S. 449, 36 Sup. Ct. 403,

60 L. Ed. 738; 173 Ky. 1, 189 S. W. 1136, Ann. Cas. 1918B, 41. No presumption in favor of plaintiff's employment can be indulged. 97 Ala. 181, 12 South. 103; 144 Ala. 169, 39 South. 1017; 152 Ala. 110, 44 South. 661, 13 L. R. A. (N. S.) 561, 126 Am. St. Rep. 20; 183 Ala. 123, 62 South. 721. Court erred in permitting the plaintiff's counsel to read a charge and separate and emphasize it. Section 5364, Code 1907, as amended by Acts 1915, p. 15. 52 Ala. 322; 47 Ala. 167; 45 Ala. 89, 6 Am. Rep. 693; 2 Ala. App. 92, 57 South. 88. The court erred in its rulings on plaintiff's argument to the jury. 74 Ala. 386; 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037; 187 Ala. 490, 65 South. 528, Ann. Cas. 1916E, 565.

W. A. Denson, of Birmingham, and J. J. Mayfield, of Montgomery, for appellee.

The court can consider no other grounds of demurrer than those interposed. Section 5340, Code 1907; 108 Ala. 332, 18 South. 827. There was no error in the ruling as to the special replication. 154 Ala. 578, 45 South. 906; 158 Ala. 475, 48 South. 546; 170 Ala. 538, 54 South. 280. In any event the matter was properly presented to the jury by the charges. But the replication was sufficient. 194 Ala. 395, 69 South. 607; 33 Ind. 126; (Tex. Civ. App.) 51 S. W. 290; 58 Neb. 49, 78 N. W. 483; 170 Ala. 537, 54 South. 280. If the evidence is sufficient to take the case to the jury in the state court, it was sufficient to take it there in the federal court. 163 Ky. 125, 173 S. W. 343; 161 Ky. 824, 171 S. W. 847; 162 Ky. 843, 173 S. W. 151; 99 S. C. 417, 83 S. E. 639; 104 S. C. 173, 88 S. E. 445. Although based on the federal Employers' Liability Act, cause was triable and was tried in the state court, and hence local rules apply. 241 U. S. 316, 36 Sup. Ct. 564, 60 L. Ed. 1016; 240 U. S. 466, 36 Sup. Ct. 399, 60 L. Ed. 745; 242 U. S. 306, 37 Sup. Ct. 116, 61 L. Ed. 319. Under the rules of the federal court, all the questions of employment were properly submitted to the jury. 239 Fed. 75, 152 C. C. A. 125; 239 U. S. 50, 36 Sup. Ct. 4, 60 L. Ed. 139. The plaintiff was an employee. 98 Ala. 588, 13 South. 489; (Ind.) 121 N. E. 333; 166 Mass. 268, 44 N. E. 218; 190 Ill. 145, 60 N. E. 87; 148 Ala. 151, 41 South. 988; 41 Fla. 94, 25 South. 332; 1 Labatt, 56.

McCLELLAN, J. As appears from the foregoing statement, the plaintiff sued the railway company (appellant) for damages for personal injuries resulting from the derailment of an interstate passenger train. The action is against an interstate carrier, by a plaintiff who avers that he was, at the time, in the employ of the railway company and then discharging his duties, in interstate commerce, under that employment. The record has been accorded very careful consideration by all of the members of the court; its entire contents being submitted first hand to the judges in consultation. Particular scrutiny and deliberation has been given the whole evidence presented on the main trial and that laid before the court in connection with the motion for a new trial.

1. It is insisted for appellant that the trial court erred in overruling the demurrer to the replication to pleas 2 and A, reproduced in the statement ante. These pleas set up a release of liability, signed by the plaintiff. Unless avoided, the release was a bar to recovery in this action. Disclosing two readily distinguishable aspects, the replication sought to avoid the release pleaded by the averment, in the one aspect, that the plaintiff was ignorant of its contents; that he did not know it was what it purported to be; that the defendant's agents misrepresented its contents; that he was deceived of its contents; and that the named agent of defendant practiced a fraud upon him; and, in the other aspect, the replication asserted a want of consideration for the release, this by averring that the money, alleged in the pleas and recited in the instrument of release to have been received for the discharge from liability of both the defendant and the American Express Company, was not given or received, as a consideration for the release, but, on the contrary, was a pure gift to plaintiff. The only objections taken to the replication are those noted in the grounds of demurrer set out in the preceding statement of the case. There is no ground of demurrer taking the point that the replication improperly joins two distinct matters in avoidance of pleas 2 and A. Berlin Mach. Works v. Ewart Co., 184 Ala. 272, 281, 63 South. 567; Highland Avenue & Belt Railroad Co. v. Dusenberry, 94 Ala. 413, 10 South. 274. The doctrine of these decisions is at least an apparent departure from the pertinent rule stated in Houston v. Hilton, 67 Ala. 374, and Bolling v. McKenzie, 89 Ala. 470, 7 South. 658, among other earlier pronouncements. To the grounds assigned will the review here be confined on this phase of the case.

[1-5] If the money received by the plaintiff was a gift, affording no consideration for the release asserted in pleas 2 and A, the plaintiff was under no duty to restore the money, so received, as a condition to his avoidance of the release. West. Ry. of Ala. v. Arnett, 137 Ala. 414, 426, 34 South. 997: B. R. L. & P. Co. v. Jordan, 170 Ala. 530, 537, 539, 54 South. 280. In consequence, the demurrer's grounds 1, 2, 8, 11, 12, and 22 were not well taken. In the brief for appellant it is urged that the replication was deficient in this particular: That it did not aver that the misrepresentations alleged induced the plaintiff to sign the instrument. Since there is no ground of demurrer tak-

ing this objection to the replication—our statute (Code, § 5340) requiring the specification of objections to pleading—this criticism of the replication cannot avail the appellant. The fraudulent misrepresentation of the contents of an instrument by a party thereto, or by his agent taking the instrument, affords grounds to avoid the instrument's effect notwithstanding the signator neglected to read the instrument. West Ry. of Ala. v. Arnett, supra; Burroughs v. Pac. Guano Co., 81 Ala. 255, 258, 1 South. 212. The invalidating effect of the replication's averments with respect. to the misrepresentatiohs described therein cannot be avoided by the mere fact that plaintiff did not read the paper before signing it. Burroughs' Case, supra. Hence, the grounds of demurrer asserting, in effect, plaintiff's duty to have read the paper were not, under the allegations of this aspect of the replication, well taken. Like considerations justified the action of the court in refusing special requests for' instructions that would have concluded the plaintiff because of his neglect to read the release asserted in pleas 2 and A. When the replication is considered in the light of the averments of the respective pleas to which it was addrest—pleas asserting the very release to which the replication refers—it is entirely clear that the allegations of the replication were sufficient to charge Stone, as defendant's agent in the premises, with the fraudulent conduct upon which the replication. in this aspect, relied. In these circumstances, there was no necessity or occasion otherwise to aver Stone's authority in the premises. The replication was not subject to any ground of this demurrer, and the trial court, being confined to action upon the grounds of demurrer assigned, did not err in overruling the demurrer.

2. The next question (and, with another raised by the motion for a new trial, the important inquiry presented for review) is whether there was any evidence that the relation of master and servant existed between the railway company (defendant-appellant) and the plaintiff at the time the plaintiff was injured.

[6] The allegation in the complaint being that plaintiff was an employee of the railway company (defendant) and engaged in interstate service, the positive, substantive law governing the rights and liability vel non of the parties is the amended federal Employers' Liability Act. Acts of Congress 1908, c. 149, 35 Stat. 65, as amended in 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. §§ 8657–8665). That enactment is paramount and exclusive within the field of its operation. L. & N. R. R. Co. v. Carter, 195 Ala. 383, 385, 70 South. 655, Ann. Cas. 1917E, 292, and Ex parte Atl. Coast Line R. Co., 190 Ala. 132, 67 South. 256, where the decisions of the Supreme Court are noted. The right this

plaintiff would assert and have vindicated is, hence, a right created by the federal act; and the inquiry stated above, in this connection, is a federal question, and its decision here is subject to review by the Supreme Court of the United States. C. & O. Ry. Co. v. De Atley, 241 U. S. 310, 317, 36 Sup. Ct. 564, 60 L. Ed. 1016; M., K. & T. Ry. Co. v. West, 232 U. S. 683, 34 Sup. Ct.'471, 58 L. Ed. 795.; L. & N. R. R. Co. v. Holloway, 246 U. S. 525, 529, 38 Sup. Ct. 379, 62 L. Ed. 867. Where a state court decides the inquiry, whether there is. any evidence supporting a material issue in an action subject to the exclusive government and control of the federal Employers' Liability Act, a federal question of law is presented for review, and will be reviewed, on error to the Supreme Court. C. & O. Ry. Co. v, De Atley, supra, 241 U. S. 310, 316, 317, 36 Sup. Ct. 564, 60 L. Ed. 1016; L. & N. R. R. v. Holloway, supra. In actions like this the service performed by the state courts, trial and appellate, is in administration of the federal act; and the discharge of this duty in the domain of the exclusive federal authority governing the substantive rights of the parties requires recognition that the national laws statutory and decisional—not the state law—is paramount in the premises. As respects matters of "practice and procedure" only—matters pertaining to the remedy merely—the local law, the procedural law of the forum, is applicable and is due to be observed in the conduct of causes subject to the federal Employers' Liability Act. Central Vermont Ry. v. White, 238 U. S. 507, 511 et seq., 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; C. & O. Ry. Co. v. De Atley, supra, among others.

[7] It is contended in brief for appellant— in part, if not chiefly in point of premise, upon the definition of the pertinent rule to be later quoted from Commissioners, etc., v. Clark, 94 U. S. 278, 284, 24 L. Ed. 59—that in determining, at nisi prius, the legal inquiry raised by appropriate, requested instructions, whether there is any evidence supporting averments necessary to be established by a plaintiff whose right to recover is subject to the government and control of the federal Employers' Liability Act, the federal rule (stated in Commissioners, etc., v. Clark, supra), not the rule prevailing in Alabama, commonly called the "scintilla rule" (see 6 Ency. Pl. & Pr. pp. 675–678, noting Alabama decisions; 2 Thompson on Trials, § 2246, pp. 1599, 1600), should be observed in passing upon such requested instructions as would withdraw the case from the jury's consideration, in effect directing a verdict for defendant. If the appellant's stated contention involves "practice and procedure" merely, it could not be well founded. Author, supra. Whether such is the category to which the proposition is to be referred, is

the primary and controlling consideration. It is manifest that the gist of the inquiry thus made is whether the plaintiff has discharged the burden of proof assumed by him in his pleading and imposed by the federal act (Robinson v. B. & O. R. R. Co., 237 U. S. 84, 94, 35 Sup. Ct. 491, 59 L. Ed. 849) in respect of the material averment that the contractual relation (Robinson's Case, supra) of master and servant existed at the time alleged, there being no presumption that the relation did exist (Mathews v. A. G. S. R. Co., 200 Ala. 251, 76 South. 17, 19). The Supreme Court said in N. O. & N. E. R. Co. v. Harris, 247 U. S. 367, 371, 372, 38 Sup. Ct. 535, 62 L. Ed. 1167, following and applying the doctrine of its deliverance in Cent. Vermont Ry. Co. v. White, 238 U. S. 507, 511, 512, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252:

"In proceedings brought under the federal Employers' Liability Act rights and obligations depend upon it and applicable principles of common law as interpreted and applied in federal courts; and negligence is essential to recovery. * * * These established principles * * * we think make it clear that the question of burden of proof is a matter of *substance* and not subject to control by laws of the several states" (Italics supplied)—this in denial of the application of a Mississippi statute providing that where the injury complained of was shown to have been inflicted by railway instrumentalities, among other agencies, the fact of injury made a prima facie case of want of reasonable skill and care.

To the same effect is Y. & M. V. R. R. Co. v. Mullins, 249 U. S. 531, 39 Sup. Ct. 368, 63 L. Ed. 754.

Under these decisions the matter of burden of proof is regarded as of the substance of the right created by the federal act and is, hence, without the category of "practice and procedure" that otherwise is subject to the control of the local law, the law of the forum. The necessary result is that the inquiry, raised by appropriate request for instructions against the right of the plaintiff to recover, is whether the burden of proof has been met or discharged in a particular case; whether sufficient evidence has been adduced to justify or require the submission of the issue to the jury; and is to be measured and decided at nisi prius under the federal rule, to be later restated, rather than under the "scintilla rule" (where the slightest evidence or inference therefrom requires submission to the jury) prevailing in Alabama in the trial of causes unaffected by federal law. The federal rule under consideration is thus stated in Commissioners, etc., v. Clark, 94 U. S. 278, 284 (24 L. Ed. 59):

"Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence. Ryder v. Wombell, Law Rep. 4 Exch. 39.

"Decided cases may be found where it is held that, if there is a scintilla of evidence in support of a case, the judge is bound to leave it to the jury; but the modern decisions have established a more reasonable rule, to wit, that, before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed."

This pronouncement has been often reiterated, notably in Bowditch v. Boston, 101 U. S. 16, 18, 25 L. Ed. 980, and its application illustrated in the federal courts. Dernberger v. B. & O. R. Co. (D. C.) 234 Fed. 406, 407, where many cases are noted. See, also, 9 Rose's Notes (Rev. Ed.) pp. 599, 603. "Literally no evidence" is not the exaction of the federal rule, as it is under the "scintilla rule" obtaining in Alabama. It has been long settled in the federal jurisdiction that a defendant is entitled to have a verdict directed in his behalf if the measure of evidence required by the federal rule is not presented to the court in discharge of the plaintiff's burden of proof on a matter material to his case. Bowditch v. Boston, supra; Delaware R. R. Co. v. Converse, 139 U. S. 472, 11 Sup. Ct. 569, 35 L. Ed. 213. In Meguire v. Corwine, 101 U. S. 108, 111 (25 L. Ed. 899) it was said: "A judge has no right to submit a question where the state of the evidence forbids it." In North Penn. R. Co. v. Bank, 123 U. S. 727, 733, 8 Sup. Ct. 266, 31 L. Ed. 287, this was the observation: "It would be an idle proceeding to submit the evidence to the jury when they could justly find only one way." Whether the requirement of the federal rule, as a condition to the right to submit the matter in issue to the jury, has been met by the party on whom rests the burden of proof, is a preliminary inquiry addressed to the judge, who, it is said in Patton v. T. & P. Ry. Co., 179 U. S. 660, 21 Sup. Ct. 275, 276 (45 L. Ed. 361), "is primarily responsible for the just outcome of the trial"—the judge being charged under that jurisprudence "with full responsibility" in the premises. This view of the applicability of the stated federal rule, rather than of the local rule, with respect 'to the discharge vel non of the burden of proof under the federal Employers' Liability Act, is necessary to an orderly, uniform administration of the matters of substance created by that act. Otherwise, there would be no uniformity in state jurisdiction—called to enforce the federally created right (Minn. & St. L. R. R. v. Bombolis, 241 U. S. 211, 36 Sup. Ct. 595, 60 L. Ed. 961, L. R. A. 1917A, 86, Ann. Cas. 1916E, 505)—where the "scintilla

rule of evidence," rather than the stated federal rule, prevails. In state jurisdictions observing the "scintilla rule" an undeserved privilege would be accorded a plaintiff, appropriately asserting a right under the federal act, to institute his action in the tribunal exacting a less degree or measure of evidence to discharge, to the extent of requiring submission to the jury of a matter material to the issue, of his burden of proof. The following decisions, noted on brief for appellee, hold that the rule of the forum, the local law, not the stated federal rule, is applicable in the trial of such actions in the state courts: L. & N. R. R. Co. v. Johnson's Adm'x, 161 Ky. 824, 171 S. W. 847; Dutton v. A. C. L. R. Co., 104 S. C. 16, 88 S. E. 263; L. & N. R. R. Co. v. Holloway's Adm'r, 163 Ky. 125, 173 S. W. 343; Mulligan v. A. C. L. R. Co., 104 S. C. 173, 88 S. E. 445—decided by the courts of Kentucky and South Carolina. These deliverances did not, of course, take proper account of the now, later-established fact (N. O. & N. E. R. R. Co. v. Harris, supra) that the burden of proof, under the federal Employers' Liability Act, is a matter of substantive right, not pertaining to practice and procedure merely. The writer entertains the opinion that the stated federal rule, and not the "scintilla rule of evidence" obtaining in the courts of Alabama, should govern in determining whether the plaintiff had so far supported his material allegation of the existence, at the time of the injury, of the relation of servant to this defendant as master as to have justified the trial court in refusing the defendant's requests for general affirmative instructions against a recovery by plaintiff. The concurring justices are, however, of the opinion that, since reversal of the judgment must enter because of the error committed in overruling the motion for new trial, it is not necessary to consider or to decide at this time what rule, federal or state, should govern in determining the propriety vel non of the trial court's action in refusing the requested general affirmative instructions.

[8] Recurring to the consideration of the merits of the question, whether the relationship averred existed at the time the plaintiff was injured: It has been decided by the Supreme Court of the United States that the test to determine the existence vel non of the relation of master and servant is whether the asserted employer "retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done," it being necessary carefully to distinguish "between authoritative direction and control, and mere suggestion as to details; * * *" Railroad Co. v. Hanning, 15 Wall. 649, 656 (21 L. Ed. 220); Singer Mfg. Co. v Rahn, 132 U. S. 518, 522, 523, 10 Sup. Ct. 175, 33 L. Ed. 440; Chicago, etc., Co. v.

Bond, 240 U. S. 449, 456, 36 Sup. Ct. 403, 60 L. Ed. 735; Standard Oil Co. v. Anderson, 212 U. S. 215, 227, 29 Sup. Ct. 252, 53 L. Ed. 480; New Orleans, etc., Co. v. United States, 239 U. S. 202, 206, 36 Sup. Ct. 76, 60 L. Ed. 227; Harrell v. Atlas, etc., Co., 250 Fed. 83, 95, 96, 162 C. C. A. 255; The Squire, 248 Fed. 469, 471, 160 C. C. A. 479. It results from the decisions of the Supreme Court that, if the control defined in the quotation ante is not present, the person asserted to be the servant of a particular master (especially as between two apparent masters) does not bear that relation to such master. The fact that the inquiry arises in a case where a defendant is sought to be held responsible, under the doctrine of respondeat superior, for negligently inflicted injury or damage to a third person, cannot avail to avert the discriminative application of the test stated. The principle is to be accorded influence, and, in proper cases, controlling operation wherever the inquiry involves the judicial affirmation or denial of the existence of the relation of master and servant with respect to any particular event or transaction. In Standard Oil Co. v. Anderson, 212 U. S. 215, especially 220 et sec., 29 Sup. Ct. 252, 53 L. Ed. 480, it was, in effect, affirmed that power to select, employ, compensate, and discharge do not conclude against the existence of the relation of master and servant between the person rendering the particular service and another to whose control, as stated, the person rendering the particular service, at the time, was subject. Evidence directed to showing the power in one to select, employ, compensate, and discharge the person whose status is under investigation, is, of course, serviceable to establish the existence of the relation such powers naturally conduce to prove. 1 Labatt on Master & Servant, § 18, pp. 56–60. In the absence of explanation, it is inferable, prima facie, that a person found doing a service for another is in that other's employ. Wood on Master & Servant (2d Ed.) § 306; Perry v. Ford, 17 Mo. App. 212, 220; McCann v. N. Y. Cent., 66 Barb. (N. Y.) 338; 26 Cyc. p. 1410, subd. 3. But this rule is denied application or effect in the present instance, because there is "no absence of explanation." The motion for new trial contained the grounds that the verdict was contrary to the evidence or the great preponderance of the evidence. The plaintiff's injury, in the wreck of an interstate passenger train operated by the defendant, when he was in the actual discharge of his duties as sole baggagemaster on that train, having been shown, one of the two main issues was whether plaintiff bore to the defendant the relation he averred. From a review of the whole evidence adduced on the main trial, these conclusions of fact were indisputably established: (a) That in response to application made by plaintiff to the American Express Company (not to the

railway company) the express company gave plaintiff a position and assigned him to the interstate run on which he was injured; (b) that his monthly compensation was paid by the express company; (c) that his duties in that service, where he acted as express messenger and sole baggagemaster, were defined to him by the express company; (d) and that the express company, alone, had the power to discharge him. The evidence relating to plaintiff's connection with the Birmingham office of the American Express Company after his injury, that relating to money paid him either as a gratuity or as salary for service rendered after his injury, and that relating to the character of pay roll or receipt (other than the release set out in pleas 2 and A), were without influence upon the issue of plaintiff's employment vel non by the railway company at the time of his injury. The testimony of plaintiff, himself, does not admit of an interpretation that money paid him after his injury was a sum or sums, constituting salary, to which the railway company contributed as salary for plaintiff. The plaintiff, himself, testified, and so averred in his replication, that money paid him by the express company after his injury, while he was unable to work, was a mere gratuity.

The statement of plaintiff in response to the question, "What was your employment on November 18, 1913?" that "he was train baggagemaster on the Illinois Central Railroad for the Illinois Central Railroad Company," was to this effect only: To show what work he was doing on the date, stated—a fact that did not indicate, with any definiteness under the whole evidence, whether he was at the time the employee of the express company or the railway company. It was not, itself, inconsistent with employeeship to the express company and in that relation doing work, at the instance and under the superior direction of the express company, for the railway company. According to the test before restated, whereby it may be determined whether the relation averred existed at the time plaintiff was injured, the power of authoritative, detail control over plaintiff's discharge of the duties of express messenger and sole baggagemaster on the train was shown by the great weight of the evidence to be in the express company. The only fact or circumstance opposed, in any degree, to this conclusion, is that, under the undisputed evidence, this plaintiff was required to make report as baggagemaster to the general baggage agent of the defendant at Chicago, Ill. This fact, considered alone, was capable of raising an inference that this duty to report implied a right in the railway company to control the details of the work performed by the plaintiff in respect of the discharge by him of the duties referable to the subject of such report. This possible inference is, in itself, weak and inconclusive when considered in connection with the other evidence. It may have consisted entirely with the existence of "authoritative direction and control" in the American Express Company, the railway company having but the right of "mere suggestion as to details." Railroad Co. v. Hanning, supra, and other decisions before cited. Taking due account of this duty to report, this court's opinion is that, under the familiar rule of Cobb v. Malone, 92 Ala. 630, 635, 9 South. 738, the trial court erred in overruling the motion for new trial because the overwhelming weight of the evidence, after "allowing all reasonable presumptions" in favor of the jury's conclusion, went to prove that the plaintiff did not, at the time of his injury, bear the conventional relation of employee to the railway company as his employer, the essence of such relation being one of contract, express or implied.

For the error indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and SOMERVILLE, JJ., concur.

GARDNER, THOMAS, and BROWN, JJ., dissent.

On Rehearing:

BROWN, J. This action is by the appellee, Johnston, against the Illinois Central Railroad Company, a common carrier of interstate commerce, for personal injuries alleged to have been received by the plaintiff on the 18th day of November, 1913, as a proximate result of the defendant's negligence, and, as alleged in the complaint, while plaintiff was employed by defendant in such commerce, and is rested upon the provisions of the federal Employers' Liability Act of April 22, 1908 (35 Stat. C. 149 [Comp. Stat. §§ 8657–8665]).

The plaintiff (appellee here) concedes that it is essential to his right to recover under this act that the burden is on him to show that he was an employee of the defendant and engaged in interstate commerce at the time he was injured; this being one of the essential averments of his complaint. Hull v. Philadelphia Ry. Co., 252 U. S. 475, 40 Sup. Ct. 358, 64 L. Ed. 670; Robinson v. Balt. & Ohio R. R. Co., 237 U. S. 84, 94, 35 Sup. Ct. 491, 59 L. Ed. 849.

[9] On original consideration of the questions presented by the action of the court on the motion for new trial, it was ruled that the defendant had not acquitted itself of negligence with respect to its failure to discover and present the alleged newly discovered evidence on the trial. K. C. M. & B. R. R. Co. v. Phillips, 98 Ala. 159, 13 South. 65; McClendon v. McKissack, 143 Ala. 188, 38 South. 1020; Sou. Ry. Co. v. Wildman, 119 Ala. 565, 24 South. 764. This ruling necessarily lays out of view the alleged newly discovered evidence and the question now to be considered

must be determined from the evidence offered on the trial and submitted to and considered by the jury.

The sole ground on which the reversal of the judgment was awarded was that the evidence offered by the plaintiff was wholly insufficient to warrant the jury in finding that the plaintiff was an employee of the defendant at the time he was injured. Therefore, for the purposes of this case, assuming that the burden of proof is of the substance of the right of action given by the federal act, and that the federal rule which requires that the evidence offered by the plaintiff must be such as will warrant the jury in proceeding to a verdict in favor of the plaintiff (Rider v. Wombell, Law Rep. 4 Exch. 39; Bowditch v. Boston, 101 U. S. 16, 25 L. Ed. 980; Delaware R. R. Co. v. Converse, 139 U. S. 472, 11 Sup. Ct. 569, 35 L. Ed. 213), and not the "scintilla rule," applies, we will proceed to re-examine this question.

The evidence shows without dispute that the train, the derailment of which resulted in inflicting the injuries on the plaintiff, was a passenger train operated by the defendant on its road between Birmingham, Ala., and Chicago, Ill., for the carriage of passengers and their baggage; that for the purpose of carrying baggage it carried as a part of the train a compartment baggage and express car, in one compartment of which was carried the baggage of passengers, and in the other express for the American Express Company; that the plaintiff was the sole baggagemaster on the train between Birmingham and Cairo; that on the day on which plaintiff received his injuries the train left Birmingham for Cairo, manned by a crew of the defendant's employees, with the plaintiff in charge of the baggage and express car; and that at the time of and immediately before the derailment of the train the plaintiff was actively engaged in the discharge of his duties as baggagemaster, making out a report which he was required to forward to the general baggagemaster of the defendant company in Chicago. As to his employment, the plaintiff testified in response to the following question by his counsel:

"Mr. Johnston, what was your employment on November 18, 1913? Answer: "I was train baggagemaster on the Illinois Central Railroad for the Illinois Central Railroad Company."

And, further:

"I acted as baggagemaster and express agent on the train from Birmingham to Cairo, Ill. On this occasion I left Birmingham at noon going toward Cairo, and we had baggage going as far as Canada, I think—I won't be positive about that. We had baggage going beyond Cairo. It was a through train to Chicago. The Illinois Central Railroad carries passengers and freight between Birmingham and Cairo. They do a general business of common carrier of freight and passengers between Birmingham and Cairo, and were at the time of the accident. * * * I am not positive how long I had been on the run when I was injured."

On cross-examination the plaintiff testified that he was employed by E. K. Stone, superintendent of the American Express Company at Memphis, Tenn.; that he made application to Stone for employment with the American Express Company, and was employed about June 26, 1913; that he had formerly worked for the express company in a like capacity, and understood his duties; that he received his pay twice a month, and signed the pay roll at the office of the American Express Company; that his first employment in this capacity was about ten years previous; and that on the occasion of that employment he made application to a Mr. Adams, superintendent of the American Express Company at St. Louis, and under that employment he worked for the "American Express Company and the Illinois Central Railroad Company."

The defendant's witness Scott testified that he was an employee of the American Express Company; that he had never been in the employ of the defendant company and had no connection whatever with it; that he did not know much about the duties of a baggagemaster on the route, except that he was supposed to look after the baggage; that it was the duty of the express messenger to do this, but he had no knowledge of the arrangement between the express company and the railroad company, if any there was. E. K. Stone, a witness for the defendant, testified that he was at the time of the injury and prior thereto superintendent of the American Express Company; that Johnston at the time of the injury was working for the American Express Company, and had been working for them, under his last employment, for four or five months prior to his injury; that plaintiff made application to him by letter for employment, and that he (witness) wrote him he could probably provide a place for him, and he came down "and did extra running as a messenger," and at the time he was injured was "running as express messenger for the American Express Company," at a salary of $80 per month, which was paid by the express company; that it was "his duty to receive and deliver express to and from the cars and make a record of it as he handled it—also to handle the baggage and baggage supplies in the same manner"; that no one except the American Express Company had authority to employ or discharge men as express messengers to do the work Johnston was doing at the time; that they were paid by the express company, and their duties and labor controlled by the express company. On cross-examination this witness testified that he did not know what arrangements the American Express Company had with the Illinois Central Railroad Company through which the express messenger handles the baggage of the railroad company; that

such matters were handled by higher authority than the superintendent.

It cannot be doubted that some officer, agent, or employee of the railroad company was charged with the duty of employing or arranging for the employment of baggagemen for its trains—the work which plaintiff was doing at the time of the injury—and yet not a single employee of the defendant was called to testify on this subject, and no contract, rule, or other documentary evidence was offered on the trial to shed light on this question. The defendant was content to rest this aspect of its case on the testimony of the two agents of the express company, who were shown to have no knowledge of the business arrangement between the express company and the railroad company, if such there was, under which the plaintiff was doing the work and performing the duties of baggagemaster for the defendant.

[10] The evidence stated clearly warranted the submission of this question to the jury, and warranted them in finding that the plaintiff was an employee of the defendant at the time he was injured. A. C. L. R. R. Co. v. Treadway's Adm'x, 120 Va. 735, 93 S. E. 560, affirmed on appeal, 245 U. S. 670, 38 Sup. Ct. 191, 62 L. Ed. 540; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480; Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922; T. C. I. Co. v. Hayes, 97 Ala. 201, 12 South. 98; Drennen & Co. v. Smith, 115 Ala. 397, 22 South. 442; L. & N. R. R. Co. v. Williams, 199 Ala. 453, 74 South. 382; North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Dallas Mfg. Co. v. Townes, 148 Ala. 146, 41 South. 988.

[11] The next and final question to be considered is whether the verdict in this case is so grossly excessive that the court should have awarded a new trial on that ground. The evidence pertinent to this inquiry shows that the plaintiff at the time of his injury was 41 years of age, of splendid physique, and in perfect health; that he was wholly dependent on his labor for the support of himself and his family; that at the time of his injury he was earning $80 per month; and that since that time the salary of the position which he then held has been increased to $110 per month.

The evidence warranted a finding by the jury that the plaintiff's injuries were permanent, destroying his physical and mental integrity, and rendering him a helpless cripple for life; that his disability was accompanied by constant pain and suffering; and that his earning power has been practically, if not completely, destroyed. Dr. Davis, a surgeon of long experience, who had made two examinations of the plaintiff—the first a short time after the injury and the other shortly before the trial—testified in substance that as a result of the accident the plaintiff had suffered a displacement of the lower lumbar vertebrae to such extent as to separate the sacrum joint on both sides of the vertebrae, causing a sacroiliac looseness in these joints; that the tendency of such injury was to produce more or less disability; usually accompanied with pain; and that in his opinion the plaintiff is permanently crippled and disabled. The injury occurred November 18, 1913, and on the trial four years later the plaintiff testified:

"When the train derailed I was knocked unconscious. When I came to myself I found my back was badly hurt, and I had received a scalp wound extending from here to here [indicating], and this finger was crushed and broken. * * * I have not been able to perform the duties of my employment since that time. I have never been able to work. [Here witness weeps.] I was a healthy man before this. I was strong and healthy and vigorous and worked regularly. I could take a trunk or baggage up this way and put it as high as any man. I have not been able to do that since this accident. I have not been able to work at all to do anything. I am not able to appear in court when it comes to what I am able to do. I worked regularly before the accident. [Witness weeps.] My head don't bother me except with dull pain. My back is in constant pain, unbearable pain, all the time when I am sitting in this position. In this position I get some rest, but there is pain there all the time. I cannot relax at night when I lie down, and some nights I don't sleep one wink, just lie there, and my back goes this way [illustrating]. My kidneys bother me some, more or less, ever since that, and never bothered me before that."

The evidence further shows that a month or so after the plaintiff left the hospital he was given employment by the express company as cashier in its office in Birmingham, and that his physical and mental condition was such that he could not perform the duties of this employment, though they were light, and for this reason he was let out of such employment.

While the damages awarded were in a sense heavy, after taking into consideration the physical injury and suffering, plaintiff's physical and mental condition before the injury and his reasonable expectancy of life, together with the financial loss by reason of loss of earning capacity, and depreciated value of money as a medium of exchange at the time of the award of the damages and now, we are not convinced that the damages awarded are so excessive as to justify interference by this court. In normal times judgments awarding larger damages have been sustained for injuries no more serious than those here shown. Huggins v. A. C. L. R. R. Co., 96 S. C. 267, 79 S. E. 406; Hughes v. Harbor & S. B. & S. Ass'n, 131 App. Div. 185, 115 N. Y. Supp. 320; Zibbell v. So. Pac. Co., 160 Cal. 237, 116 Pac. 513; Tex. & Pac. Ry. Co. v. Matkin (Tex. Civ. App.) 142 S. W. 604; Id., 107 Tex. 125, 174 S. W. 1098; Mc-

Mahon v. Ill. Cent. Ry. Co., 127 Minn. 1, 148 N. W. 446; St. L. I. M. & S. Ry. Co. v. Webster, 99 Ark. 265, 137 S. W. 1103, 1197, Ann. Cas. 1913B, 141; Houston & T. C. R. Co. v. Gray (Tex. Civ. App.) 137 S. W. 729; Reeve v. Colusa Gas & Electric Co., 152 Cal. 99, 92 Pac. 89; Penn. Co. v. Barton, 130 Ill. App. 573; Huggard v. Glucose Sugar Refining Co., 132 Iowa, 724, 109 N. W. 475; Waters-Pierce Oil Co. v. Snell, 47 Tex. Civ. App. 413, 106 S. W. 170; Padrick v. Gr. North. Ry. Co., 128 Minn. 228, 150 N. W. 807, L. R. A. 1915F, 1; Otos v. Gr. North. Ry. Co., 128 Minn. 283, 150 N. W. 922, affirmed, 239 U. S. 349, 36 Sup. Ct. 124, 60 L. Ed. 322; Hackett v. Chi. I. & L. Ry. Co., 170 Ill. App. 140; Id., 228 U. S. 559, 33 Sup. Ct. 581, 57 L. Ed. 966; Whitehead v. Wis. Cent. Ry. Co., 103 Minn. 13, 114 N. W. 254, 467; Yazoo & M. V. R. Co. v. Wallace, 91 Miss. 492, 45 South. 857; St. L. S. W. Ry. Co. v. Waits (Tex. Civ. App.) 164 S. W. 870.

In the case of L. & N. R. R. Co. v. Williams, 183 Ala. 138, 62 South. 679, Ann. Cas. 1915D. 483, this court affirmed a judgment awarding $27,000 for an injury not as serious as the injuries in this case, and at that time the dollar had double its present purchasing power. It was there observed:

"These verdicts, it is freely conceded, do not illustrate the average conceptions of juries, as shown by the general run of the cases reviewed in the two notes referred to, and in the brief for appellant. But, as noted by the editor of Annotated Cases (16 Ann. Cas. 10), the tendency in recent years has been for verdicts to award, and appellate courts to sustain, increasingly larger sums as compensation for personal injuries. This is attributable, no doubt, to the greatly decreased purchasing power of a dollar, as exemplified in the rise in the price of nearly all commodities, and the enormous increase in the cost of living; and, in some measure, perhaps, to a higher regard for human life and the value of physical efficiency."

See, also, Cent. of Gas Ry. Co. v. White, 175 Ala. 62, 56 South. 574.

The jury and the trial court had the opportunity of seeing and observing the plaintiff while he was testifying as a witness, and were in a better position to determine whether or not his condition was feigned or real; and after a careful consideration of the evidence in this record, we find no just reason for disturbing the verdict. Ray v. Watkins, 203 Ala. 683, 85 South. 25, and authorities there cited. Other questions are fully dealt with in the original opinion.

The rehearing is therefore granted, the judgment of reversal set aside, and the judgment of the circuit court is affirmed.

SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

SAYRE, J., concurs in the opinion as to the rules of substantive law, but holds that the verdict is excessive and for this reason the judgment should be reversed.

ANDERSON, C. J., and McCLELLAN, J., dissent, adhering to the views expressed in the original opinion.