HUGHES v. HARBOR & SUBURBAN BUILDING & SAVINGS ASS'N et al.

(Supreme Court, Appellate Division, Second Department. March 5, 1909.)

1. CONTRACTS (§ 198*)—BUILDING CONTRACTS—PERFORMANCE.

    A contractor, required to repair a building damaged by fire by putting in new roof beams, new roof, and all necessary beam filling, and by removing all rubbish belonging to the roof, was not required to remove loose bricks in the wall, but was only bound, as far as the walls were concerned, to take the partly burned beams out, replacing them with new ones and

---

filling up the walls where the ends of the beams rested; the rubbish belonging to the roof not including any part of the walls of the building.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 198.*]

2. NEGLIGENCE (§ 35*)—CARE OF BUILDINGS.
One in possession and control of tall buildings, beneath which pedestrians walk must exercise care commensurate with the danger to prevent the fall of articles on passers-by.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 54; Dec. Dig. § 35.*]

3. NEGLIGENCE (§ 121*)—CARE OF BUILDINGS—RES IPSA LOQUITUR.
Proof that a brick fell from the wall of a tall building, damaged by fire, injuring a pedestrian on the sidewalk, was proof of the negligence of the owner, within the rule of "res ipsa loquitur," requiring the owner to defeat a recovery, to explain the cause of the accident and show his freedom from negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 218, 225; Dec. Dig. § 121.*]

4. NEGLIGENCE (§ 61*)—CARE OF BUILDINGS—CONCURRENT NEGLIGENCE.
An owner of a tall building, so damaged by fire as to loosen the bricks at the top of the wall, who employed a contractor to put·a roof on the building and to set new roof beams in the wall, must take precautions to protect pedestrians using the street from injuries by falling brick, and he cannot relieve himself from liability because of the negligence of some one else, for whom he was not responsible, concurrent with his own negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 75; Dec. Dig. § 61.*]

5. NEGLIGENCE (§ 50*)—CARE OF BUILDINGS.
A contractor, employed to put a roof on a tall building so damaged by fire as to loosen the bricks at the top of the wall, must exercise ordinary care and take precautions to protect pedestrians on the sidewalk from injuries by falling brick, though his employés doing the work are not careless.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 50.*]

6. NEGLIGENCE (§ 139*)—DANGEROUS BUILDINGS—ACTIONS—INSTRUCTIONS.
Where, in an action against the owner of a building damaged by fire and the contractor employed to put on a new roof, for injuries to a pedestrian struck by a falling brick the court charged that the duty imposed by Building Code, § 80, requiring the owner or contractor repairing buildings to make a shed over the sidewalk in front of the premises and thereby protect pedestrians, was the same as the duty imposed at common law, and left it for the jury to determine whether the owner and contractor ought to have known that the situation presented danger to pedestrians, and, if so, what means should have been employed to protect them, the question of the proper construction of the section did not arise.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 139.*]

7. NEGLIGENCE (§ 136*) — DANGEROUS BUILDINGS — CARE REQUIRED—QUESTION FOR JURY.
Where the brick wall of a building damaged by fire is in a dangerous condition because of the liability of materials to fall from it, the owner, who knows the facts or in the exercise of reasonable care should know them, must protect pedestrians, and cannot complain because the court left it to the jury to say what he should do to protect them.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 136.*]

8. NEGLIGENCE (§ 55*)—DANGEROUS BUILDING—CARE REQUIRED.
A contractor, employed to repair a building damaged by fire, is alone responsible for an injury to a pedestrian, struck by a brick falling from the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

115 N.Y.S.—21

building, where the wall thereof was not left in a dangerous condition, or where the brick fell solely because of his negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 68; Dec. Dig. § 55.*]

9. NEGLIGENCE (§ 54*)—DANGEROUS BUILDING—CARE REQUIRED.

A wall of a building was left in an unsafe condition after a fire, because of the liability of bricks therein to become dislodged and fall to the street. The owner contracted for repairs without taking any precautions to protect pedestrians. The contractor, knowing the condition of the wall, undertook to do the work, involving danger, without taking measures to guard against it. *Held*, that both were guilty of breaching an affirmative duty to guard against a danger which a prudent man would have anticipated, and both were liable for injuries to a pedestrian struck by a falling brick.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 54.*]

10. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

A man, 29 years of age, suffered a compound, comminuted, depressed fracture of the skull. Broken pieces of the bone were removed, leaving an opening in the skull. The dura mater was punctured. He suffered from progressive traumatic epilepsy as the result of the injuries. He was a graduate of an academy, and was employed as private secretary to a member of a firm of brokers, who compiled data and made estimates of the value of railroad properties. He had nearly qualified to be licensed as a public accountant, and was receiving a salary of $1,800 a year and a bonus. *Held*, that a verdict for $40,000 was not excessive; the jury being entitled to consider the man's prospects, and not being confined to the diminution of his earning power.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 374; Dec. Dig. § 132.*]

Appeal from Trial Term, Kings County.

· Action by James F. Hughes against the Harbor & Suburban Building & Savings Association and another. From a judgment for plaintiff, and from orders denying motions for a new trial, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, GAYNOR, RICH, and MILLER, JJ.

Alexander S. Bacon, for appellant Harbor & Suburban Building & Savings Ass'n.

Edward P. Mowton, for appellant John C. Gabler Co.

Frederick B. Campbell (Henry S. Curtis, on the brief), for respondent.

MILLER, J. On the morning of September 28, 1907, as the plaintiff, on his way to his office, was passing along Montague street, in the borough of Brooklyn, in front of the Arlington Apartment House, a · brick, falling from the top of said building, a distance of 100 feet, struck him on the head, and inflicted injuries for which a jury has awarded him the sum of $40,000. The judgment is against both defendants, the owner and a contractor engaged at the time in putting on a new roof; and both appeal, each asserting that there is no evidence of negligence against it, and that errors were committed by the trial judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The evidence discloses that a fire had occurred on the 9th of September, which had partly consumed the woodwork of the three upper stories and the roof, and had wholly burned a wooden tower, as it is called, built on the brick wall above the tenth floor, on a corner of the building next to the street. The supports of the metal roof cornice in front of the building were at least partly burned, and the seams of the metal work were so affected by the heat that a part fell into the street and the rest remained hanging. There is evidence tending to show that the mortar on the top of the brick wall had so been damaged as to require the relaying of some 2,000 bricks, and that, at the extreme top, there were a number of bricks, a part of the wall, so loose that they could be picked out by hand. While that evidence is challenged by the defendant owner, it is supported by the reasonable inference of the effect of the fire, and fully justifies the conclusion that that was the condition. No claim is made that the loose bricks were taken out of the wall, or that any provision was made to repair or change its condition, from the time of the fire to the time of the accident. Pending the arrangements preliminary to making general repairs, it was necessary to put a roof on the building to protect it from the elements, and the defendant owner made a contract with the other defendant to do that. That contract did not require or contemplate any repair or change of the wall as it existed when the contract was made. The contractor was to put in new roof beams, a new roof, etc., and to "do all necessary beam filling and remove all rubbish, *which belong to the roof,* from the premises." (Italics are mine.)

While some claim is now made that that required the removal of the loose bricks in the wall, if there were any, it is plain that the parties did not so understand. Indeed, the defendant owner says that there were none; and rubbish belonging to the roof does not include any part of the walls of the building. The roof beams were set into holes four inches deep on the inside and two feet below the top of the walls. All the contractor had to do to the walls was to take the partly burned beams out, replace them with new, and, if necessary, fill up the holes where the ends of the beams rested. The said contractor began work on the 24th of September, and at the time of the accident some of his men were at work on the roof at or near the place from which the brick fell. A derrick had been rigged up for hoisting material from the street; but it does not appear that it was in use at the time of the accident. The day before the accident a brick was observed by people in the street to fall from the building upon the walk and break in pieces; and the street sweeper testified that for several successive days immediately preceding the accident he had swept from the sidewalk in front of the building pieces of brick and mortar. No shed was erected over the sidewalk, and there was no barrier, sign, or watchman to give warning. The defendant owner was in possession and control of the building and had a watchman on the ground. No work was being done at the time of the accident, except as hereinbefore stated.

It cannot be doubted that the owner of this building should have ascertained the condition of the walls as soon as possible after the fire. The defendant contractor had actual knowledge of their condi-

tion, as its president testified to it. Those in possession and control of tall buildings, beneath which pedestrians have to walk, should exercise care commensurate with the danger. The cases of objects falling on pedestrians in public streets are the common ones for the application of the rule of "res, ipsa loquitur." Mullen v. St. John, 57 N. Y. 567, 15 Am. Rep. 530. The falling of the brick called for an explanation from the owner in possession and control. He attempted to meet that burden by shifting the responsibility on the so-called independent contractor, and now seeks to have the inference drawn that the brick was dislodged by the carelessness of workmen for whom said defendant owner was not responsible. The defendant contractor attempted to shield itself from responsibility by showing that the top of the wall was in such an unsafe condition that a brick was liable to fall from it at any moment, and that it had nothing to do with the wall; and it contends that no inference can be drawn from the fact that its men were at work on the roof in close proximity to the wall.

I think the reasonable inference is that the brick was in some way dislodged by the men at work on the roof; and, for the purposes of this case, it seems to me immaterial whether the immediate act of such workmen was negligent or not. The defendant owner employed a contractor to put a roof on the building and to set the roof beams in a wall which had been damaged by fire, without making any provision to repair, or insure the safety of, the wall, or to protect pedestrians on the street. A reasonably prudent man would have apprehended that the doing of that work might dislodge some of the loose bricks and cause them to fall into the street. It may be a matter of speculation whether the immediate act which caused the brick to fall was careless; but the plaintiff is not to be turned out of court for that. The defendant owner was negligent for not repairing the wall or taking any measures to protect the public, and it cannot free itself from the consequences of its carelessness because the negligence of some one else for whom it was not responsible may have concurred with its own. It could not discharge its duty to protect the public from this dangerous wall by letting a contract, not to repair the wall, but to make it more dangerous. The defendant contractor is in no better case. It undertook to construct this roof and to set roof beams into a wall which, it knew, was in an unsafe condition. If its men were careless, of course, it is liable; and, even though they were not careless, the jury might well say that a man undertaking to set roof beams into, and construct a roof against, an unsafe wall 100 feet above the sidewalk, should, in the exercise of ordinary care, take some precautions to protect pedestrians from the danger of falling bricks. The jury have said that both were careless, and I think that both were culpably careless.

One of the cases relied upon by the defendant owner is the case of Wolf v. American Tract Society, 164 N. Y. 30, 58 N. E. 31, 51 L. R. A. 241. In that case the plaintiff was injured by a brick falling from a building in the course of construction, upon which 19 different contractors were employed, and there was no proof as to who set the brick in motion. The plaintiff sought to hold in the Court of Appeals a judgment against the general contractors, but did not appeal

from a judgment dismissing the complaint as against the owner. Had the respondent in that case been the owner, who had undertaken, through the instrumentality of 19 different contractors, to construct that building, an entirely different question respecting his affirmative duty to protect pedestrians would have been presented; and I apprehend that the case would have been decided the other way. It will be seen, from the two opinions in that case, that the point of difference was whether the duty of the owner to protect the public devolved on the general contractor.

I am unable to perceive how the doctrine that one is not liable for the negligence of an independent contractor has anything to do with this case. The defendant owner has not been made liable for the negligence of the contractor, but for his omission to discharge an affirmative duty to the public. If it had employed a contractor to repair and make safe this wall, and in the prosecution of that work a brick had been dislodged, the doctrine contended for might be applicable, although I am not now prepared to say that, even in that case, the affirmative duty of the owner to pedestrians in the street could be delegated. None of the cases cited by the appellant involve that question. It is sufficient for the purposes of this case that the owner never contracted with any one to remove the loose bricks from this wall, to repair it, or to make it safe, but, in place of that, contracted for the doing of work which was bound to increase the danger.

Section 80 of the Building Code was admitted in evidence. It provides that:

"Whenever buildings shall be erected or increased to over sixty-five feet in height, upon or along any street, the owner, builder or contractor constructing or repairing such buildings, shall have erected and maintained during such construction or repair, a shed over the sidewalk in front of said premises, extending from building line to curb, the same to be properly, strongly and tightly constructed, so as to protect pedestrians and others using such streets."

It is difficult to see why the section does not apply. The building was 100 feet high, and was certainly being repaired within the meaning of said section. However, the learned trial judge instructed the jury respecting the duty imposed by said section precisely the same as he instructed them respecting the duty at common law; in other words, he left it for the jury to say whether the defendants ought to have known that the situation presented danger to pedestrians on the street, and, if so, what means should have been employed to protect them. Any discussion, therefore, of the construction, force, or effect of said section seems to be aside the questions arising on this record.

Many criticisms are made by the appellant owner of the charge of the judge and of the theory upon which the case was tried. There were distinct grounds upon which the defendants might have been held liable jointly, or one of them separately. There was a dispute whether the wall was left in a dangerous condition after the fire, and as to what extent the work actually done by the Gabler Company's men involved the wall. It is not easy to present such issues to a jury without confusing them. But I think that was done in this case. The learned trial judge charged the jury in substance: (1) That if the

wall was left in an unsafe and dangerous condition, so that material was apt to fall and was in fact falling from it, the owner, if it knew it, or in the exercise of reasonable care should have known it, was called upon to protect pedestrians; and he left it to the jury to say what it should have done to that end—i. e., whether it should have put up a shed, a barrier, or sign, or have done something to protect or warn pedestrians. (2) That if the wall was not left in a dangerous condition, or if the brick fell solely because of the negligence or carelessness of the Gabler Company's men, that defendant alone, and not the owner, was liable for the accident. (3) That, if the work called for by the Gabler contract was intrinsically dangerous, and could not be done without material falling on people, no matter how much care was used, and the contractor and the owner both knew that, it was for the jury to say whether both were not negligent for not taking some means to protect or warn passers-by.

The difficulty with the last proposition is that it was too favorable to the defendants. The question whether the work was intrinsically dangerous was not in the case, and for the purposes of this appeal it may be assumed that the work was not intrinsically dangerous. The verdict shows conclusively that the jury found that the wall was left in an unsafe condition after the fire, and that there were loose bricks in it, liable to be dislodged. The case of the owner, then, is that it let a contract for the putting of roof beams into, and the construction of a roof against, that kind of a wall without taking any measures to make it safe, or to protect passers-by. The case of the contractor is that, knowing the condition of the wall, it undertook to do work involving danger, which it took no measures to guard against. It is the case of danger for which both were partly responsible, in respect of which each separately owed an affirmative duty, which neither discharged. It is not a case of intrinsic danger of work contracted to be done, but of a danger which a prudent man would have anticipated and guarded against, and in respect of which there was no contract. In this view of the case it is not necessary to scrutinize the charge for technical inaccuracies of expression too favorable to the defendants.

At the time of the accident the plaintiff was a young man, 29 years of age, but recently married. He was a graduate of Phillips Exeter Academy and was employed as private secretary to a member of a firm of brokers who compiled data and made estimates of the value of railroad properties. He had nearly qualified to be licensed as a public accountant. He was receiving a salary of $1,800 a year and a bonus at Christmas. He suffered a compound, comminuted, depressed fracture of the skull. Broken pieces of bone were removed, leaving a hole or opening in the skull of 2½ by 2¾ inches. The surgeon who attended him testified that the dura mater was punctured, but that there was no visible injury to the pia mater. There was sufficient evidence to justify the jury in finding that he is now suffering from progressive traumatic epilepsy as the result of his injuries. While $40,000 would be too much, based solely upon earning power of $1,-800, the jury were entitled to consider the prospects of this young man,

and, in awarding him damages for an injury which has evidently ruined his life, they were not confined to the diminution of his earning power.

The judgment should be affirmed.   All concur.