GILBERT PROPERTIES, INC., Respondent, *v.* CITY OF NEW YORK et al., Defendants-Appellants, and Third-Party Plaintiffs-Respondents. NEW YORK CITY HOUSING AUTHORITY, Third-Party Defendant-Appellant, et al., Third-Party Defendant.

First Department, December 2, 1969.

*Beatrice Rothman* of counsel (*Alfred Weinstein* with her on the brief; *J. Lee Rankin, Corporation Counsel*), for City of New York and another, appellants.

*William F. McNulty* of counsel (*Daniel J. Coughlin*, attorney), for New York City Housing Authority, appellant.

*Martin Block* of counsel (*Seymour L. Colin*, attorney), for respondent.

McNally, J. In this action to recover for property damage, defendants City of New York and Board of Education of the City of New York appeal from a judgment in the sum of $15,303.05 after a jury trial. Judgment over was directed in favor of

defendants-appellants as against the third-party defendant-appellant, New York City Housing Authority.

The City of New York and the Board of Education appeal from the judgment entered in the case in chief. The third-party defendant New York City Housing Authority appeals from the judgment over on the third-party complaint.

Defendants City of New York and Board of Education were formerly the owners of land and a school building on West 117th Street in the Borough of Manhattan. It is undisputed that title to the property was conveyed to the third-party defendant New York City Housing Authority by a deed recorded in the office of the Register of New York County on March 5, 1963. Three weeks thereafter the New York City Housing Authority entered into a contract with A. Duffy Used Brick House Wrecking Co., Inc., the other third-party defendant, for the demolition of the school building. Duffy has defaulted in the action. There was no proof offered as to when the demolition work started or whether it was in progress on the date the accident happened. All the record shows is that an application for the requested demolition permits was filed by the New York City Housing Authority in the office of the Department of Buildings of the City of New York prior to August 13, 1963. On that date, the brick wall located between the rear of the school building and the rear of plaintiff's building for unknown reasons collapsed, causing damage to the rear of plaintiff's building.

The present action by plaintiff to recover for damage to its property was commenced against the City of New York and the Board of Education on July 27, 1964, although the City of New York had long prior thereto been divested of title by deed dated January 3, 1963, recorded March 5, 1963. Plaintiff's claim previously filed against defendants was disallowed on this ground by the Comptroller of the City of New York on January 28, 1964. Nevertheless, plaintiff alleged in paragraph Fifth of its complaint that New York City was the owner, and in paragraph Sixth that the Board of Education was the owner, and further, in paragraph Seventh, that the defendants were engaged in the demolition of the school. The joint answer of the city and Board of Education denied paragraph Seventh and denied ownership in the Board of Education, but inadvertently failed to deny the allegation of the city's ownership. There is no allegation of maintenance and control in the amended complaint.

In May, 1966 the Corporation Counsel's office, representing both defendants, served plaintiff's attorney with a notice of intention to amend at the trial to deny the allegation of owner-

ship in the city. When the case came to trial in December, 1967 the Trial Justice denied the motion on the ground of prejudice to plaintiff. The case was tried and submitted to the jury on the theory that the property was owned by the city and Board of Education, although the answer denied the allegation of ownership as far as the Board of Education was concerned, the court charging the jury that the City of New York was the owner of the property under the pleadings. Motions to dismiss were denied by the Trial Justice and judgment on the verdict was entered as indicated above.

In our opinion the judgment cannot stand. In the absence of some statute imposing liability on the owner of real property, liability is an incident to occupation and control. (*Cullings* v. *Goetz,* 256 N. Y. 287, 290.) There is no proof that either the city or the Board of Education exercised control over the school property or the retaining wall on the date that the accident occurred. Furthermore, there is no proof of negligence on the part of the city or the Board of Education in connection with the collapse of the retaining wall. The record merely shows that the wall collapsed. The demolition contract was made between the third-party defendants, New York City Housing Authority and Duffy, and the record fails to show any retention of supervision by the city or Board of Education.

The cases on which respondent relies are inapplicable. *Hanley* v. *Central Sav. Bank* (255 App. Div. 542, affd. 280 N. Y. 734) turns on the proposition that an owner of property who employs a general contractor and retains control through a supervisor who was on the premises approximately every day to determine the progress of the work and to generally supervise, may be liable for negligent performance of the contractor. The supervisor had given instructions by way of criticism of the type of demolition construction work, so that the same would conform to the plans and specifications. To the same effect is *Hooey* v. *Airport Constr. Co.* (253 N. Y. 486) where the defendant general contractor was on the scene during the progress of the work and had hired a subcontractor to build certain walls. In *Boylhart* v. *DiMarco & Reimann* (270 N. Y. 217) the contractor employed a subcontractor. In *Rosenberg* v. *Schwartz* (260 N. Y. 162) defendant was in control of the work. In *Hyman* v. *Barrett* (224 N. Y. 436) the owner had not authorized any work which created the danger. In *Storrs* v. *City of Utica* (17 N. Y. 104) the city had control of the public streets. *McNulty* v. *Ludwig & Co.* (153 App. Div. 206) was tried on the theory of a public nuisance. In *Hughes* v. *Harbor & Suburban Bldg. & Sav. Assn.* (131 App. Div. 185) the owner employed the contractor. In

*Lockowitz* v. *Melnyk* (143 N. Y. S. 2d 135) the contractor was hired by the owner. The same situation obtained in *Schwartz* v. *Merola Bros. Constr. Corp.* (290 N. Y. 145) and *Rohlfs* v. *Weil* (271 N. Y. 444). The owner and the lessee, respectively, in those cases entered into the contract. In the instant case there was no contract entered into by the alleged owner, the City of New York, or the Board of Education, and no allegation or proof of maintenance or control, and no reservation of control by lease or otherwise.

The trial court charged the doctrine of *res ipsa loquitur*. The essential element in a *res ipsa loquitur* case is control over the instrumentality causing the injury. (*George Foltis, Inc.* v. *City of New York*, 287 N. Y. 108; cf. *Corcoran* v. *Banner Super Market*, 19 N Y 2d 425.)

For the aforesaid reasons, we hold the amended complaint should be dismissed, without prejudice.

If we did not dismiss the amended complaint, we would reverse and order a new trial on the ground that the denial of the motion to amend the answer to permit denial of ownership on the part of the city was an unwise exercise of discretion and constituted prejudicial error.

Prior to commencing the action, plaintiff had notice that the city did not own the property. At a hearing held in the Comptroller's office on January 28, 1964, on plaintiff's claim against the city and the Board of Education, plaintiff's attorney was advised that the property was owned by the New York City Housing Authority, an independent agency, and that the Authority had engaged Duffy as its demolition contractor, and accordingly the City of New York would disclaim liability since it was not the owner. Furthermore, plaintiff had constructive notice concerning ownership since the deed conveying the property from the city to the Housing Authority was recorded March 5, 1963. Long before the trial, plaintiff had further notice that the city did not own the property in August, 1963, since in May, 1966 it was notified that the city intended to move at the trial to amend the answer to deny ownership.

The record further indicates that plaintiff was not prejudiced by the fact that the city's answer had failed to deny ownership. When the action was commenced, plaintiff was not in a position to commence suit against the Housing Authority (General Municipal Law, § 50-e; Public Housing Law, § 157; *Robinson* v. *New York City Housing Auth.*, 8 A D 2d 747, affd. 7 N Y 2d 908). At the time the action against the city was instituted in July, 1964, plaintiff's suit against the Authority was precluded by reason of plaintiff's failure to file a timely notice of claim. The

city's omission to deny ownership did not prejudice plaintiff. The motion to amend the answer to permit denial of ownership by the city should have been granted. Any prejudice to plaintiff resulted from its own failure timely and diligently to protect its rights, and not from the city's omission to deny ownership in its answer. Further, in ordering a new trial we would hold the verdict to be against the weight of the evidence.

Assuming, however, ownership on the part of the city, there is nevertheless no liability, in our opinion, in the absence of proof of some measure of maintenance and control. Since plaintiff failed to allege maintenance and control, and although we are mindful of the concession of plaintiff that a case was not made out against the Board of Education, in the event plaintiff may be able to allege and establish some degree of maintenance or control on the part of either the city or the Board of Education, the judgments and order should be reversed, on the law, without costs, and the amended complaint dismissed, and, in the interests of justice, without prejudice. (See CPLR 205.)

The dismissal of the amended complaint makes unnecessary the consideration of the other points raised by appellants.

McGivern, J. (dissenting). Another trial is factually unnecessary, and without legal justification. This case was tried on the pleadings: The city, by its answer, concededly admitted ownership. The Housing Authority (the members of which are appointed by the Mayor) in its answer to the third-party complaint, denied ownership. Both knew or should have known, the facts were otherwise. The city, in its brief, now says the Housing Authority was in possession and control. The Housing Authority, in which title had vested at pleading time, in its reply brief, now would put the onus on the city alone. Whatever the real reason, whether it was design or culpable negligence, no explanation of the pleadings is vouchsafed in the record. In my view, it was a bureaucratic case of the left desk not knowing or caring what the right desk had done, and the plaintiff has been victimized by the vacillation or indifference of these branches of the city which have played shuttlecock with his cause.

This we do know: A 15-foot retaining wall of a city school tumbled onto the property of the innocent neighbor (plaintiff) on August 13, 1963, and since that date the plaintiff has gone unrecompensed. At the time of the falling wall, demolition of the school was concededly in progress. At noon, certainly, and at 4:00 p.m., according to the witness Chung Sing Lee, the wall was standing. At about 4:30 p.m., however, he heard a noise, and Jericho-like, the wall came tumbling down. Quoth the wit-

ness Chung Sing Lee: "I heard noise, the big noise, and then, you know, all the things come from outside * * * We saw — you know, the school, you know — one part of the building still there and the part, you know, facing to my kitchen, is fall down, come down to my kitchen."

And at the time of the accident, August 13, 1963, application by the wrecker for demolition had been approved, on July 11, 1963. In requesting such approval, the Housing Authority, by letter, June 26, 1963, said "the City agreed to furnish the Authority with all municipal services and facilities in connection with the above-mentioned project." And on August 5, 1963, or eight days before the fall, the records of the Department of Buildings show that it had no objection to the use of mechanical means of demolition. The records also reveal the presence of a crane contiguous to the wall, which from the pictures, looked as though it had been blitzed.

Since the city made no attempt to amend its answer formally, in my view, the Trial Judge exercised right discretion in declining the city's eleventh hour offer to. amend orally at the trial. True, on May 3, 1966, the city served a notice to amend. But the plaintiff immediately notified the city it would object. This was already two years from the time answer was served and almost one year from the time the third-party complaint was served. Yet the city slumbered on. So did the Housing Authority. Neither defendant was stirred into serving pleadings in accordance with the records in their own knowledge or possession. Thus, at the time of the trial, laches had set in. Delay had worked a disadvantage and a prejudice to the plaintiff. The statute, it is claimed, had run as to the Housing Authority. The Duffy Wrecking Co. had gone bankrupt, and the plaintiff, relying on the city's answer, i.e., that it was the owner, did not call for a marshalling of the Duffy assets or for the appointment of a Receiver. Under these circumstances, the trial court was correct in refusing the amendment belatedly offered at trial.

On the evidence presented by the plaintiff at the trial, and unrefuted, the plaintiff stands on firm ground. For at the end of the plaintiff's case, with all of the properly drawn inferences running against the defendants, they both refused to go forward. The majority may find *Hanley* v. *Central Sav. Bank* (255 App. Div. 542, 543, affd. 280 N. Y. 734) inapplicable, but in that opinion we find the categorical language: "Demolition of a building in a crowded section of a city should be considered as inherently dangerous (Restatement of the Law of Torts, §§ 412–416). If so, the defendant-respondent bank as owner of the property could not relieve itself of responsibility from trespass by the

engaging of an independent contractor. (*Boylhart* v. *DiMarco & Reimann, Inc.,* 270 N. Y. 217; *Rosenberg* v. *Schwartz,* 260 id. 162; *Hyman* v. *Barrett,* 224 id. 436; Restatement of the Law of Torts, § 422.) ''

It is also to be noted that recovery in *Hanley* was upheld on an *alternative* theory, the court saying (p. 543): '' Even if such work be regarded as not inherently dangerous, still under the circumstances of this case the jury were entitled to find against the bank, though an independent contractor had been hired. (*Petluck* v. *McGoldrick Realty Co., Inc.,* 240 App. Div. 61.) ''

Relating *Hanley* to the instant case, the fact that the wall did fall on the property of the innocent taxpayer, while city demolition concededly was in progress, permits the inference that the wall was in a dangerous condition, and failure to adopt proper safeguards preventing collapse, exposes the demolisher to damages. Recent expressions of the Court of Appeals cast light on the underlying principles: '' The rule with respect to ' inherently dangerous ' work is an exception to the general rule that an employer is not liable for the torts of his independent contractor (Prosser, Torts [3d. ed.], § 70, p. 484). This exception is properly applicable to cases such as *Rohlfs* v. *Weil* (*supra*) where the danger is readily apparent and the accident foreseeable.'' See *McDonald* v. *Shell Oil Co.* (20 N Y 2d 160, 166); and BREITEL, J., dissenting in part, in *McDonald* said (pp. 168–169): '' Restatement, Torts, Second, states the rule applicable to the vicarious liability of an owner for work done by an independent contractor involving special dangers: ' One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.' (§ 427) * * * Thus, the principle involved is that of nondelegable duty, the service station owner's responsibility being vicarious and not depending upon evidence of its own negligence.''

And most recently, the Court of Appeals, in *Spano* v. *Perini Corp.* (25 N Y 2d 11, 17 [June 5, 1969]) held that one who engages in blasting is liable without fault, for any injury to neighboring property. Significantly, the court said: '' The question, in other words, was not *whether* it was lawful or proper to engage in blasting but *who* should bear the cost of any resulting damage — the person who engaged in the dangerous activity or the innocent neighbor injured thereby ''. That is what we

have before us, the "innocent neighbor", who more than six years after the wall fell on his property, is still unrequited in damages by the municipal agencies responsible. I do not necessarily equate blasting with all demolition cases but the expanding concept of liability as expounded in *Perini* (*supra*) suggests there be no dilution of the "inherently dangerous" doctrine when applied to demolition in a crowded section of Manhattan.

Since a new trial will add nothing or little to our present knowledge, the disposition of the majority, in my view, is unnecessarily harsh on a blameless taxpayer, wasteful of judicial time, and inequitable in result. I would affirm now the jury's verdict and uphold the providently exercised discretion of the Trial Judge.

STEVENS, P. J., and TILZER, J., concur with McNALLY, J.; McGIVERN, J., dissents in opinion, in which EAGER, J., concurs.

Order entered on July 22, 1968, and judgments entered on August 22, 1968, and October 9, 1968, reversed, on the law, without costs and without disbursements, the amended complaint dismissed, and, in the interests of justice, without prejudice.