■ RICHARD V. ROCHETTE et al., Respondents, v TOWN OF NEWBURGH et al., Defendants, and WILLARD HERING et al., Appellants. — In a negligence action to recover damages for personal injuries, etc., defendants Hering appeal from an order of the Supreme Court, Dutchess County (Jiudice, J.), dated December 9, 1980, which denied their motion for summary judgment. Order affirmed, without costs or disbursements. On February 18, 1973, plaintiff Bari Joy Rochette attended a winter sports event held at Orange Lake in Orange County. Plaintiffs claim that Ms. Rochette, then aged 11, was severely and permanently injured as a result of a collision on the lake between two ice sailboats. Defendants Hering are 2 of 248 owners of real property adjacent to Orange Lake, who have been named as defendants in this lawsuit. It is plaintiffs' claim that the defendant property owners are legally responsible for their failure to take such safety measures as were reasonable with respect to the conducting of activities on the lake. The motion for summary judgment by appellants was denied at Special Term on the basis that there existed questions of fact with respect to the legal rights and interests of the Herings in and to Orange Lake by virtue of their title to property adjacent to the lake. It is appellants' position that assuming, *arguendo,* they have possessory or ownership rights in the lake, there was no duty owed by them to the infant plaintiff. We disagree. It should be noted that Orange Lake, over a long period of time, has been used for iceboat racing events or regattas. The record further demonstrates that these wind-powered craft, which rest on steel runners, are capable of traveling at high rates of speed on the frozen lake under proper weather conditions. It is the plaintiffs' allegation that the adjacent landowners have permitted and encouraged Orange Lake to be used for the sport of iceboat racing and, significantly, appellants do not deny knowledge of the use of the lake for winter sports, including iceboat racing. Appellants, however, maintain that they have never used the lake for iceboating, do not belong to any organizations which promote such winter sports events, and further disclaim any knowledge of the unusually large winter event that took place at the lake on the day that the infant plaintiff was injured. Appellants further note that their affidavits indicated they never had "any type of control, management or supervision of *any* activities on the lake" and that these allegations of fact went uncontroverted. On the papers before it, however, Special Term properly concluded that it could not make a determination as to appellants' control of the property, given the inconclusive language in their deed that referred to their predecessor in title's grant to them of "the right, title and interest, *if any* * * * in and to the waters of Orange Lake and the land underneath the same" (emphasis supplied). Since Special Term could not ignore the possibility that appellants may have had some interest in the lake, it could not rule out the further possibility that this interest vested appellants with control over the lake sufficient to hold them liable for injuries arising out of activities that took place upon it. Appellants' liability in negligence or nuisance as owners or

possessors of such real property would be predicated, under long-standing principles of common law, upon their control of the premises (see *Ritto v Goldberg,* 27 NY2d 887, 889; *Kilmer v White,* 254 NY 64; *Mollino v Ogden & Clarkson Corp.,* 243 NY 450; *Ahern v Steele,* 115 NY 203; *Gilbert Props. v City of New York,* 33 AD2d 175, 178, affd 27 NY2d 594; *Smith v City of Corning,* 14 AD2d 27; *Mortimer v East Side Sav. Bank,* 251 App Div 97; *Lusk v Peck,* 132 App Div 426, affd 199 NY 546; *Merrick v Murphy,* 83 Misc 2d 39; cf. Restatement, Torts 2d, § 328 E [definition of "possessor" in fixing liability for condition or use of land]; but cf. *Weiner v Leroco Realty Corp.,* 279 NY 127 [Multiple Dwelling Law, § 78, subd 1]; *Richardson v Cannold Holding Corp.,* 308 NY 932 [Labor Law, § 315]), nor would premises liability be limited to defects in the condition of the property, as appellants suggest. Appellants' liability may also extend to injuries arising from the use of, or activities upon, the premises (see *Scurti v City of New York,* 40 NY2d 433; see, also, *Ebbe v Harry M. Stevens, Inc.,* 1 NY2d 846, and *Philpot v Brooklyn Nat. League Baseball Club,* 303 NY 116 [baseball fields]; *Tantillo v Goldstein Bros. Amusement Co.,* 248 NY 286, *Lazarus v Skouras Theatres Corp.,* 10 NY2d 846, and *Antinucci v Hellman,* 5 AD2d 634 [theatres]; *Spatchill v Park Circle Roller Rink,* 289 NY 786, and *Bloom v Dalu Corp,* 269 App Div 192 [ice skating]; *Allon v Park Cent. Hotel Co.,* 272 NY 631 [swimming pools]; *Arnold v State of New York,* 163 App Div 253 [racetracks]). Hence, appellants' summary judgment motion was properly denied because the crucial question of control could not be resolved on the papers submitted to Special Term. Appellants, however, maintain that, even if they are found to have control over the lake, to impose the duty upon them of regulating the activities of others on the lake would present an impossible burden. Since the law, however, requires only that appellants maintain reasonable safety precautions, this argument must be rejected (see *Scurti v City of New York,* 40 NY2d 433, *supra*). While the claimed difficulties in regulating such activities are surely factors to be considered (see *Quinlan v Cecchini,* 41 NY2d 686, 689), such difficulties in no way vitiate the duty of owners or holders of possessory interests to provide what is deemed to be appropriate safety measures under the circumstances then existing. We also reject the argument of appellants that subdivision 1 of section 9-103 of the General Obligations Law applies to iceboat racing. The statute reads: "1. Except as provided in subdivision two, a. an owner, lessee or occupant of premises, whether or not posted as provided in section 11-2111 of the environmental conservation law, owes no duty to keep the premises safe for entry or use by others for hunting, fishing, canoeing, boating, trapping, hiking, cross country skiing, speleological activities, horseback riding, bicycle riding, hand gliding, motorized vehicle operation for recreational purposes, snowmobile operation, cutting or gathering of wood for non-commercial purposes or training of dogs, or to give warning of any hazardous condition or use of or structure of activity on such premises to persons entering for such purposes; b. an owner, lessee or occupant of premises who gives permission to another to pursue any such activities upon such premises does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted." A review of the history of this statute, to which there have been numerous amendments, evidences a clear legislative intent to carefully delineate those activities for which a property owner's duty will be limited. In light of the Legislature's manifest desire for precision in this area, therefore, we decline to interpret the statute in general terms so as to declare that iceboat

racing is an activity encompassed by it. Mangano, J. P., O'Connor and Bracken, JJ., concur.

Weinstein, J., dissents and votes to reverse the order and grant appellants' motion for summary judgment, with the following memorandum: In my view, appellants are entitled to the immunity from liability conferred by subdivision 1 of section 9-103 of the General Obligations Law. As noted by the majority, paragraph a of the afore-mentioned statute provides that "an owner, lessee or occupant of premises * * * owes no duty to keep the premises safe for entry or use by others for * * * boating". The majority concludes that the Legislature, when amending the statute to insert the word "boating" (L 1979, ch 408, § 1), did not intend that iceboat racing be included within the scope of the statute. I cannot concur with that result. When the statute in question was originally enacted, as section 370 of the former Conservation Law (L 1956, ch 842), the Legislature stated that it intended, by enacting the statute, to relieve owners of large tracts of land of the fear that persons using their land for various sporting purposes would hold them liable for injuries suffered during their use of the land. The Legislature thereby hoped that these owners would, as a consequence, refrain from posting notices on their property that the land was private, and hence off limits to outdoorsmen (see Memorandum of Joint Legislative Committee on Revision of Conservation Law, McKinney's Session Laws of NY, 1956, p 1943; see, also, *Curtiss v County of Chemung,* 78 AD2d 908; *Rock v Concrete Materials,* 46 AD2d 300). This consideration applies with undiminished force to iceboat racing. It appears that Orange Lake is very well suited to accommodate the sport. With 248 adjacent real property owners having possible rights of ownership in the lake, it may be presumed that the Legislature intended the statute to encompass a case such as this, rather than have any one of the many adjacent landowners endeavor to deny the benefits of Orange Lake to the iceboat-racing public. The majority infers, from the Legislature's "manifest desire for precision," that since iceboating is not explicitly mentioned in the statute, the Legislature did not intend that iceboating be subsumed within its terms. I disagree. Besides the fact that this holding frustrates the Legislature's even more manifest, and indeed explicitly enunciated, purpose in enacting the statute, there is another consideration. It would have been both impractical and unnecessarily verbose for the Legislature to separately specify every subcategory of the outdoor activities mentioned in the statute. In my view, iceboat racing is included within the scope of the term "boating". Interest in the sport is no recent development. Iceboat racing, alternatively known as ice yachting, has been popular in various circles for several centuries. Indeed, "[i]n 1790 ice-yachting was in vogue on the Hudson River, its headquarters being at Poughkeepsie, New York" (14 Encyclopedia Britannica, [11th ed], p 241, "Ice-Yachting"), which is not far from the location of the accident in question here. By 1900, the Hudson River Club owned more than 50 ice yachts, and one iceboat attained the speed of 140 miles per hour in 1907. "Clearly, in those days, the iceboat was the fastest vehicle man had yet produced" (11 Encyclopedia Britannica [1968 ed], p 1028, "Iceboating"). Iceboat racing is similar, in many obvious ways, to boating on water. The sails and body of an iceboat resemble those of many water boats. The two kinds of boating share many similarities of operation, such as with respect to balancing and steering. Both are largely wind propelled. I conclude that iceboat racing is included within the scope of the term "boating" in the statute, and that, as a matter of law, appellants are entitled to the benefits of section 9-103 of the General Obligations Law. Their motion for summary judgment should have been granted.